UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CONDE, et al.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>SENSA, et al.,<br><br>　　　　　Defendants. | Case No.: 14-cv-51 JLS WVG<br><br>**ORDER GRANTING WITHOUT PREJUDICE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>(ECF No. 66) |

　　　Presently before the Court is Defendants' Don Ressler, Adam Goldenberg, Kristin Chadwick, Scott Whittier, Stacey Kivel, Elizabeth Francis, Jeff Campbell, Jason Morano, Katelyn O'Reilly, Michael Shay, and Cody Congleton ("MTD Defendants") Motion to Dismiss for Failure to State a Claim ("MTD"). (ECF No. 66.) The motion hearing scheduled for May 26, 2016 was vacated and the matter was taken under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered the parties' arguments and the law, the Court **GRANTS** the MTD.

/ / /

# BACKGROUND

Sensa crystals were marketed as a weight loss product consisting of "tastant crystals" that users were instructed to sprinkle on their food. The crystals supposedly interacted with users' taste and smell receptors, triggering bodily responses that would cause users to feel full and therefore stop eating earlier than usual. Plaintiff alleges that the tastant crystals were developed by Dr. Alan Hirsch, M.D., a board-certified neurologist who claimed in Sensa advertisements that the crystals were "clinically shown" to promote weight loss without dieting. (Second Consolidated Am. Class Action Compl. ("SCAC") ¶¶ 10, 68, ECF No. 60.) Sensa has since filed for bankruptcy, (*id.* ¶ 105; *see also Sensa v. Hirsch*, BC581772 (L.A. Sup. Ct. May 13, 2015)), following an FTC suit that resulted in a $46.5 million stipulated judgment, (SCAC ¶ 15), and several other related legal actions, (*id.* ¶ 89–92, 108). Plaintiff alleges the MTD Defendants held various positions of authority within Sensa and related corporations at all times relevant to the SCAC. (*Id.* ¶¶ 17–27.)

This action was originally filed on January 7, 2014 by Plaintiff Jose Conde against Defendant Sensa Products, LLC and Does 1–10 alleging violations of California law. (*See generally* Compl., ECF No. 1.) After various motion practice, the Court consolidated Conde's case with two others and appointed interim class counsel. (ECF No. 32.) Plaintiff subsequently filed the SCAC, alleging various tort- and contract-based causes of action. (SCAC ¶¶ 121–184.) Count XI—"Alter Ego/Veil Piercing"—was added for the first time in the SCAC and forms the basis of the MTD.

# LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## ANALYSIS

The MTD Defendants advance several grounds for dismissing Plaintiff's Count XI pleading regarding alter ego and veil piercing—broadly stated, that (1) Plaintiff attempts to assert a substantive cause of action for alter ego liability when California does not recognize such a claim, and (2) the SCAC does not contain sufficiently specific factual

/ / /

/ / /

allegations to permit the findings of ownership and inequitable results required to validly allege an alter ego relationship. (*See* Defs.' Mem. in Supp. of Mot. to Dismiss ("MTD Support") 5–15, ECF No. 66.) The Court addresses each argument in turn.

### 1. Alter Ego Liability as a Cause of Action

The MTD Defendants argue that Plaintiff's Count XI constitutes a "general" alter ego claim alleging that the MTD Defendants should be liable for all actions of the Sensa corporation. Recently, the Ninth Circuit concluded in *Ahcom, Ltd. v. Smeding* that under California law "there is no such thing as a substantive alter ego claim at all," but that the doctrine instead operates as a procedural mechanism to hold individuals liable for the substantive claims asserted against a corporation or other similar entity. 623 F.3d 1248, 1251 (9th Cir. 2010). Defendants further rely on this Court's statement in *Montgomery v. Wal-Mart Stores, Inc.* that the "alter ego and joint enterprise doctrines are procedural mechanisms that allow a tort claimant to recover from an individual, or a related entity, for harm caused by a corporation; they are not themselves substantive bases for liability." No. 12CV3057-JLS (DHB), 2013 WL 5278649, at *6 (S.D. Cal. Sept. 18, 2013); (*see* MTD Support at 7–8).

However, the controlling circumstance in *Montgomery* was that the plaintiffs failed to "allege any torts or other causes of action against [the relevant Defendants] that might serve as a substantive basis for liability."[1] 2013 WL 5278649, at *6. In the instant case, however, that same circumstance is not present. Plaintiff clearly states in her "Alter Ego" claim that the "aforementioned Defendants are <u>liable for the conduct [of] Sensa Products, LLC and Sensa, Inc.</u>" underlying the preceding eleven claims. (SCAC ¶ 187 (emphasis added).) While perhaps not perfectly pled, the Court finds that Plaintiff's simply listing

---

[1] Also factually distinguishable, *Ahcom* merely held that the relevant complaint should not have been dismissed under the <u>Defendants-Appellees' theory that a general alter ego claim existed</u>. *Ahcom*, 623 F.3d at 1250–53 (noting that "although the [Defendants-Appellees] prevailed in the district court, there is a crucial problem with their argument: it assumes the existence of a general alter ego claim").

the alter ego theory as another "Count" is not fatal to the theory's application to the facts of the case. *See Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351, 1358 (1988) (noting that "alter ego issue is ordinarily raised by the pleadings" but "even when not pleaded . . . may be resolved at trial . . . at a hearing to determine the true identity of the judgment debtor . . . or even in a separate action subsequent to the action against the fictitious corporate defendant" (citations removed)); *id.* ("An alter ego defendant has no separate primary liability to the plaintiff. Rather, plaintiff's claim against the alter ego defendant is identical with that claimed by plaintiff against the already-named defendant.").

Defendants also argue that Plaintiff's ending her MTD Opposition by "request[ing] an opportunity to amend her complaint to properly re-assert the veil piercing and alter ego allegations," (Pl.'s Opp'n to Defs.' Mot. to Dismiss ("MTD Opp'n") 19, ECF No. 70), forecloses any "credible dispute that [the MTD] should be granted," (Defs.' Reply in Supp. of Mot. to Dismiss ("MTD Reply") 2, ECF No. 73.) The Court again disagrees. Although Plaintiff's MTD Opposition concludes with this request, it begins with the assertion that the "SCAC alleges sufficient facts to state an alter ego <u>relationship</u>," (MTD Opp'n 8 (emphasis added)), and the bulk of Plaintiff's argumentation is framed as supporting the "assertion that the individual Defendants can be held liable under an alter ego theory of liability." (*Id.* at 19.) Viewed in totality, and given the supporting facts and Plaintiff's separate tort and contract allegations against the Sensa corporation, the Court construes as validly pled Plaintiff's theory of alter ego liability against the MTD Defendants for the claims set forth in the SCAC against Sensa.

**2. Failure to Meet the Alter Ego Requirements**

Both Plaintiff and the MTD Defendants agree that California law applies. California courts have stated that "[t]he purpose behind the alter ego doctrine is to prevent defendants who are the alter egos of a sham corporation from escaping personal liability for its debts." *Hennessey's Tavern*, 204 Cal. App. 3d at 1358 (citing *Hiehle v. Torrance Millworks, Inc.*, 272 P.2d 780, 783–84 (1954)). There are two separate requirements to justify imposing alter ego liability:

> First, that the corporation is not only influenced and governed by [the defendant], but that there is such a unity of interest and ownership that the individuality, or separateness, of the said [defendant] and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

*Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) (emphasis removed) (citing *Wood v. Elling Corp.*, 572 P.2d 755, 761–62 n.9 (1977)). "Ownership of an interest in the corporation is an essential part" of the first requirement, *id.*, and thus is often a threshold issue. Equitable ownership may be sufficient to meet this requirement, *see In re Schwarzkopf*, 626 F.3d 1032, 1038–39 (9th Cir. 2010), but "[i]f an individual's ownership is not established, the corporation's obligations cannot be imposed on him or her," *id.* (citing *Riddle v. Leuschner*, 335 P.2d 107, 111 (1959)).

The MTD Defendants argue that Plaintiff has failed to meet both requirements; however, the Court only needs to address the first, ownership requirement. The Court in turn addresses distinct subgroups of the MTD Defendants.

### A. Defendants O'Reilly, Shay, and Congleton (Group 1)

The MTD Defendants note that Plaintiff's SCAC fails to specifically allege any form of ownership or interest in the corporation held by Group 1, and that Plaintiff's MTD Opposition fails to address this shortcoming. (MTD Reply 3.) Plaintiff instead seemingly argues that Group 1 held sufficient equitable interests to establish ownership because they each sat on the Board of Directors, (SCAC ¶ 189); they each received distributions and payments as Sensa neared bankruptcy and dealt with the FTC suit, (*id.* ¶ 107); and Defendant O'Reilly was the Director of Public Relations, Defendant Shay was the Vice President in charge of Customer Service, and Defendant Congleton was the Vice President in charge of Customer Relationship Management, (*id.* ¶¶ 25–27). Defendants assert that these allegations do not satisfy the threshold ownership interest requirement, but the Court does not need to decide this issue; Plaintiff's allegations concerning Group 1 fail in any event under the unity of interest prong.

Merely alleging that Group 1 served on Sensa's board of directors falls well short of establishing the required extraordinary unity of interest and ownership between Group 1 and the corporation. A board of directors is a standard feature in the vast majority of corporations; if simply serving on a corporation's board was sufficient to meet the unity of ownership requirement then the requirement would lose almost all meaning. Exercise of extreme dominion over the corporation is required, and thus merely showing that the corporation is "influenced and governed by [the defendant]" is insufficient. *See Firstmark*, 859 F.2d at 94; *cf. Doe v. Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001) ("A parent corporation may be directly involved in financing and macro-management of its subsidiaries, however, without exposing itself to a charge that each subsidiary is merely its alter ego.").

Accordingly, Plaintiff's allegations concerning Group 1 fall well short of validly pleading an alter ego relationship.

### B. Defendants Chadwick, Whittier, Kivel, Campbell, Morano, and Francis (Group 2)

Although Plaintiff specifically addresses Group 2 in her MTD Opposition, (MTD Opp'n 13–17), her allegations supporting ownership again seemingly turn on a theory of equitable ownership, (*see* MTD Opp'n 13 ("Thus, even if Defendants Chadwick, Whittier, Kivel, Francis, Campbell, [and] Morano . . . are not shareholders of Sensa, they can still be found liable under an alter ego theory.")). Plaintiff again notes the relevant individual MTD Defendants' positions within the corporation: Defendant Chadwick was one-time President, Defendant Whittier was Chief Scientific Officer, Defendant Kivel was Chief Marketing Officer, Defendant Campbell was Executive Vice President, Defendant Morano was Vice President of Online Media, and Defendant Francis was Chief Marketing Officer of Intelligent Beauty, Inc., a related company that eventually transformed into Sensa Inc. (SCAC ¶¶ 19–23.) However, as set forth in Section II.2.A above, mere status as a

/ / /

/ / /

corporation's director is insufficient to satisfy the ownership requirement. Accordingly, the Court only addresses Plaintiff's additional allegations regarding the individual Group 2 Defendants.

Plaintiff specifically argues the ownership requirement is satisfied because Chadwick was in charge of Sensa's day-to-day management, and that she was "promoting Sensa even after the FTC fine was levied," (Opp'n 14); Whittier knew or should have known in his capacity as Chief Scientific Officer that Sensa's claims, including those regarding the scientifically deficient studies, were false or inaccurate, (*id.* at 15); Kivel and Francis's marketing of Sensa products—Kivel at Sensa Products, LLC and Francis at Intelligent Beauty, Inc.—was false and resulted in harm to consumers, (*id.* at 16–17); Campbell and Morano were both involved in marketing Sensa to the public, (*id.* at 17); and, again, Group 2 all received distributions and payments as Sensa neared bankruptcy and dealt with the FTC suit, (*id.* ¶ 107). The Court concludes that none of these additional allegations demonstrate the domination required to allege a viable alter ego relationship. First, while the combined allegations, if true, may reveal a fundamental unity of interest across Group 2 to positively market, at any cost, Sensa products, they do not therefore prove a unity of ownership effectively merging Sensa with Group 2. Second, while the allegations regarding Defendant Chadwick come closer, Plaintiff's bare allegations that Chadwick had "day-to-day" management duties also fail to establish unity of ownership. The additional allegations that Chadwick continued marketing Sensa even after the FTC judgment—even viewed in their most negative light—also do nothing to prove that Chadwick effectively operated Sensa to the extent "that the separate personalities of the corporation and the individual . . . no longer exist[ed] . . . ." *KEMA, Inc. v. Koperwhats*, C091587-MMC, 2010 WL 3464737, at *8 (N.D. Cal. Sept.1, 2010).

Accordingly, Plaintiff's allegations regarding Group 2 also fall short of validly pleading an alter ego relationship.

/ / /

/ / /

### C. Defendants Ressler and Goldberg (Group 3)

Unlike Group 1 and Group 2, Group 3 are Sensa shareholders, and thus the first part of the ownership requirement is met.  Defendant Ressler was Executive Chairman of Sensa Inc., and Defendant Goldenberg cofounded Sensa Inc. with Defendant Ressler.  (SCAC ¶¶ 17–19.)  Both Defendants Ressler and Goldenberg, pursuant to Sensa Products' articles of incorporation, served as managers to which all officers were directed to report.  (*Id.*)  Plaintiff additionally alleges that Group 3 severely misrepresented Sensa's advertising budget in 2013 and 2014, (SCAC ¶ 192); as part of the Sensa board of directors, were consulted on and approved all major Sensa decisions, (*id.*); strategically stripped the Sensa companies of assets, (*id.*); even after Sensa's apparent insolvency in October 2013, entered into an agreement with a distributor to maximize profits before informing Sensa's suppliers and distributors in December 2013 that they were broke, (*id.* ¶ 110); and, again, received distributions and payments as Sensa neared bankruptcy and dealt with the FTC suit, (*id.* ¶ 107).

The Group 3 allegations—often cast in the form of reference to other complaints submitted in unrelated state court actions—while more specific, still fall short of demonstrating sufficient unity of ownership to validly allege an alter ego relationship.  As in Sections II.2.A–B above, Plaintiff's allegation that Group 3 "were consulted on and approved all major Sensa decisions," (Opp'n 19; SCAC ¶ 192), merely describes standard operating procedure for the vast majority of corporations.  Nor are Plaintiff's allegations that Ressler and Goldenberg were Sensa cofounders sufficient.  *See Meadows v. Emett & Chandler*, 222 P.2d 145, 147 (Cal. Dist. Ct. App. 1950) ("Mere ownership of all the stock and control and management of a corporation by one or two individuals is not of itself sufficient to cause the courts to disregard the corporate entity.").  Similarly, Plaintiff's allegations that Ressler and Goldenberg continued to act on behalf of the corporation—by entering into an agreement to maximize profits during the several months between Sensa's apparent insolvency and Sensa's official notification to suppliers and distributors that they were broke—do not indicate the degree of control required to allege an alter ego

relationship. In fact, Plaintiff's earlier allegation that "[t]he Sensa Company board, including Defendants Ressler [and] Goldenberg . . . were consulted and approved all major Sensa decisions," (SCAC ¶ 192 (emphasis added)), cuts against finding an alter ego relationship based on this alleged agreement. Sensa, according to Plaintiff's earlier assertion, would as a matter of ordinary course present the agreement to the board for approval; i.e., Ressler and Goldenberg would not simply act of their own accord. Thus Plaintiff's allegations, containing no evidence to the contrary, state nothing more than that Group 3 acted with the entire rest of the Sensa board in entering into the alleged distributor agreement. This is insufficient to exhibit unity of control.

The closest Plaintiff comes to sufficiently alleging an alter ego relationship is the allegation that Group 3 strategically stripped the Sensa companies of assets. However, Plaintiff provides no additional facts to support this allegation, instead relying on the SCAC's Exhibit K—a complaint filed in an unrelated 2015 state court case ("TCV Action")—which alleges that all defendants in the TCV Action actively "strip[ed] Sensa and IBI of assets" by diverting them to themselves while Sensa was negotiating the stipulated judgment in the FTC action. (SCAC Exh. K, ¶¶ 11, 49.) However, these general allegations do not cross the line from possible to plausible. Without any further factual support for these allegations, the Court agrees with Defendants that they are insufficient to validly plead an alter ego relationship.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## CONCLUSION

Given the preceding analysis, Plaintiff's claims of alter ego liability as to Defendants O'Reilly, Shay, Congleton, Chadwick, Whittier, Kivel, Campbell, Morano, Francis, Ressler, and Goldenberg are **DENIED WITHOUT PREJUDICE**. Plaintiff **SHALL FILE** any amended complaint that cures the deficiencies identified above by November 1, 2016.

**IT IS SO ORDERED.**

Dated: October 17, 2016

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

14-cv-51 JLS WVG