UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CONDE, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>SENSA, et al.,<br><br>  Defendants. | Case No.: 14-cv-51 JLS WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>(ECF Nos. 80, 81) |

Presently before the Court are two sets of Motions to Dismiss and corresponding briefing. The first set are Defendants Don Ressler's, Adam Goldenberg's, Kristin Chadwick's, IB Holding, LLC's, and Techstyle, Inc.'s (together, "Primary Defendants") Motion to Strike and Dismiss the Third Consolidated Amended Class Action Complaint ("Mot. to Dismiss"), (ECF No. 81), Plaintiff's Opposition to the Motion to Dismiss ("Opp'n"), (ECF No. 86), and Primary Defendants' Reply in Support of the Motion to Dismiss ("Reply"), (ECF No. 89). The second set are Defendants John Drew's and TCV VI, L.P.'s (together, "TCV Defendants") Motion to Strike Certain Allegations in the Third Consolidated Amended Complaint and to Dismiss the Third Consolidated Amended Complaint ("Non-Opp. Mot. to Dismiss"), (ECF No. 80), Plaintiff's Non-Opposition to the Non-Opposed Motion to Dismiss ("Non-Opp'n"), (ECF No. 87), and TCV Defendants' Response to Plaintiff's Statement of Non-Opposition ("Non-Opp'n Reply"), (ECF No. 88).

The Court vacated the hearing on these Motions and took the matters under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered the Parties' arguments and the law, the Court rules as follows.

## BACKGROUND

The Court has previously dismissed various aspects of Plaintiff's alter ego allegations. (Order Granting Without Prejudice Mot. to Dismiss ("Prior MTD Order"), ECF No. 75.) The general factual overview of this action is as follows.

Sensa crystals were marketed as a weight loss product consisting of "tastant crystals" that users were instructed to sprinkle on their food. (*Id.* at 2.) The crystals supposedly interacted with users' taste and smell receptors, triggering bodily responses that would cause users to feel full and therefore stop eating earlier than usual. (*Id.*) Plaintiff alleges that the tastant crystals were developed by Dr. Alan Hirsch, M.D., a board-certified neurologist who claimed in Sensa advertisements that the crystals were "clinically shown" to promote weight loss without dieting. (*Id.*) Sensa has since been assigned to creditors, following an FTC suit that resulted in a $46.5 million stipulated judgment and several other related legal actions. (*See id.*) Plaintiff alleges that the Defendants relevant to these pending Motions to Dismiss either held various positions of authority within Sensa or were interrelated corporations at all times relevant to the action. (*Id.*) Specifically, Sensa Products, LLC was 90% owned by Sensa, Inc. (formerly known as Intelligent Beauty, Inc.) ("IBI") and 10% owned by Dr. Hirsch. (TCAC ¶¶ 15, 18). IBI was in turn at least partially owned by Intelligent Beauty Holding, LLC ("IBH"), which was in turn at least partially owned TechStyle, Inc. (formerly known as JustFab, Inc.) ("JustFab"). (*See id.* ¶ 17.)

This action was originally filed on January 7, 2014 by Plaintiff Jose Conde against Defendant Sensa Products, LLC and Does 1–10 alleging violations of California law. (*Id.*) After various motion practice, the Court consolidated Mr. Conde's case with two others and appointed interim class counsel. (ECF No. 32.) Plaintiff subsequently filed the SCAC, alleging various tort- and contract-based causes of action. (Prior MTD Order 2.) Count XI—"Alter Ego/Veil Piercing"—was added for the first time in the SCAC and formed the

basis of the prior Motion to Dismiss. (*Id.*) The Court dismissed Count XI as to all then-named Defendants, and granted Plaintiff leave to file "any amended complaint that cures the deficiencies identified" in the Order. (*Id.* at 11.)

Plaintiff has now filed a Third Consolidated Amended Class Action Complaint totaling, with attached exhibits, 967 pages. (ECF No. 76.) A large portion of the attached exhibits are other complaints, each initially filed in state court ("state-court complaints"), from three pending actions: (1) *Sensa v. Hirsch* ("the *Hirsch* Action"), Case No. BC581772 (L.A. Sup. Ct. May 13, 2015); (2) *Windmill Health Products, LLC, et al. v. TCV VI, LP, et al.* ("the *Windmill* Action"), Case No. NC561252 (L.A. Sup. Ct. Oct. 3, 2016); and (3) *Bank of America, N.A. v. Sensa, Inc. et al.*, Case No. NC 564394 (L.A. Sup. Ct. Apr. 20, 2016). The *Hirsch* and *Windmill* complaints were previously attached to Plaintiff's Second Amended Class Action Complaint. (Second Consolidated Am. Class Action Compl. Exs. J, K, ECF No. 60.) Relevant to the pending Motions to Dismiss, Plaintiff has reasserted alter ego claims against five previously named Defendants: John Drew; TCV VI, L.P.; Don Ressler; Adam Goldenberg; and Kristin Chadwick. (TCAC ¶¶ 19–24, 131–43.) Plaintiff has also for the first time added Defendants IBH and JustFab. (TCAC ¶¶ 16, 17, 131–43.) Each of these Defendants have moved to dismiss the alter ego allegations against them.

## LEGAL STANDARDS

### I.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide

3

14-cv-51 JLS WVG

basis of the prior Motion to Dismiss. (*Id.*) The Court dismissed Count XI as to all then-named Defendants, and granted Plaintiff leave to file "any amended complaint that cures the deficiencies identified" in the Order. (*Id.* at 11.)

Plaintiff has now filed a Third Consolidated Amended Class Action Complaint totaling, with attached exhibits, 967 pages. (ECF No. 76.) A large portion of the attached exhibits are other complaints, each initially filed in state court ("state-court complaints"), from three pending actions: (1) *Sensa v. Hirsch* ("the *Hirsch* Action"), Case No. BC581772 (L.A. Sup. Ct. May 13, 2015); (2) *Windmill Health Products, LLC, et al. v. TCV VI, LP, et al.* ("the *Windmill* Action"), Case No. NC561252 (L.A. Sup. Ct. Oct. 3, 2016); and (3) *Bank of America, N.A. v. Sensa, Inc. et al.*, Case No. NC 564394 (L.A. Sup. Ct. Apr. 20, 2016). The *Hirsch* and *Windmill* complaints were previously attached to Plaintiff's Second Amended Class Action Complaint. (Second Consolidated Am. Class Action Compl. Exs. J, K, ECF No. 60.) Relevant to the pending Motions to Dismiss, Plaintiff has reasserted alter ego claims against five previously named Defendants: John Drew; TCV VI, L.P.; Don Ressler; Adam Goldenberg; and Kristin Chadwick. (TCAC ¶¶ 19–24, 131–43.) Plaintiff has also for the first time added Defendants IBH and JustFab. (TCAC ¶¶ 16, 17, 131–43.) Each of these Defendants have moved to dismiss the alter ego allegations against them.

## LEGAL STANDARDS

### I.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide

3
14-cv-51 JLS WVG

basis of the prior Motion to Dismiss. (*Id.*) The Court dismissed Count XI as to all then-named Defendants, and granted Plaintiff leave to file "any amended complaint that cures the deficiencies identified" in the Order. (*Id.* at 11.)

Plaintiff has now filed a Third Consolidated Amended Class Action Complaint totaling, with attached exhibits, 967 pages. (ECF No. 76.) A large portion of the attached exhibits are other complaints, each initially filed in state court ("state-court complaints"), from three pending actions: (1) *Sensa v. Hirsch* ("the *Hirsch* Action"), Case No. BC581772 (L.A. Sup. Ct. May 13, 2015); (2) *Windmill Health Products, LLC, et al. v. TCV VI, LP, et al.* ("the *Windmill* Action"), Case No. NC561252 (L.A. Sup. Ct. Oct. 3, 2016); and (3) *Bank of America, N.A. v. Sensa, Inc. et al.*, Case No. NC 564394 (L.A. Sup. Ct. Apr. 20, 2016). The *Hirsch* and *Windmill* complaints were previously attached to Plaintiff's Second Amended Class Action Complaint. (Second Consolidated Am. Class Action Compl. Exs. J, K, ECF No. 60.) Relevant to the pending Motions to Dismiss, Plaintiff has reasserted alter ego claims against five previously named Defendants: John Drew; TCV VI, L.P.; Don Ressler; Adam Goldenberg; and Kristin Chadwick. (TCAC ¶¶ 19–24, 131–43.) Plaintiff has also for the first time added Defendants IBH and JustFab. (TCAC ¶¶ 16, 17, 131–43.) Each of these Defendants have moved to dismiss the alter ego allegations against them.

## LEGAL STANDARDS

### I.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.*

## II. Alter Ego Liability

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000) (citation omitted). "A corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation." *Id.* (citing *Roman Catholic Archbishop v. Superior Court*, 15 Cal. App. 3d 405, 411 (1971)). California courts have stated that "[t]he purpose behind the alter ego doctrine is to prevent defendants who are the

4

14-cv-51 JLS WVG

alter egos of a sham corporation from escaping personal liability for its debts." *Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351, 1358 (1988) (citing *Hiehle v. Torrance Millworks, Inc.*, 272 P.2d 780, 783–84 (1954)). There are two separate requirements to justify imposing alter ego liability:

> First, that the corporation is not only influenced and governed by [the defendant], but that there is such a unity of interest and ownership that the individuality, or separateness, of the said [defendant] and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

*Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) (emphasis removed) (quoting *Wood v. Elling Corp.*, 572 P.2d 755, 761–62 n.9 (1977)); *see also Sonora Diamond Corp.*, 83 Cal. App. 4th at 538.

Nonexclusive "[f]actors that can be used to support the first element, unity of interest, include commingling of funds, failure to maintain minutes or adequate corporate records, identification of the equitable owners with the domination and control of the two entities, the use of the same office or business locations, the identical equitable ownership of the two entities, the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual, and the failure to adequately capitalize a corporation." *Pac. Mar. Freight, Inc. v. Foster*, No. 10-CV-0578-BTM-BLM, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010) (citing *Assoc. Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838–40 (1962)). "The second element requires that an inequitable result occur by the recognition of the corporate form." *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539. "Alter ego is an extreme remedy, sparingly used." *Id.* Courts look to "all the circumstances to determine whether the doctrine should be applied." *Id.*

## ANALYSIS

The Court first addresses the Non-Opposed Motion to Dismiss and then moves to the Primary Defendants' Motion to Dismiss.

/ / /

## I. Non-Opposed Motion to Dismiss

After the TCV Defendants moved to dismiss Plaintiff's TCAC, Plaintiffs submitted a statement of Non-Opposition to the TCV Defendants' Motion indicating that "Plaintiff . . . does not oppose the [M]otion" but nonetheless "reserves the right to seek leave to amend her complaint in the future should additional facts be discovered regarding" the TCV Defendants. (Non-Opp'n 1.) Defendants submitted a response asking the Court to "dismiss the [TCAC] with prejudice as to the TCV Defendants" because "the TCV Defendants' Motion to Dismiss sought dismissal 'with prejudice,' and as Plaintiff did not oppose it, the Motion to Dismiss should be granted with prejudice as to the TCV Defendants." (Non-Opp'n Reply 1.)

The Court is mindful of the fact that dismissing without prejudice Plaintiff's claims against the TCV Defendants permits Plaintiff's statement of non-opposition to effectively skirt Defendants' arguments for dismissal with prejudice. However, Defendants support their dismissal argument with citations only to our District's local rules and a secondary source. (*Id.*) And although "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint[,]" *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)), "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.' " *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (citing *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406 (9th Cir. 1960) (per curiam)). Accordingly, the Court determines that in the present case a decision regarding dismissal with prejudice should be made only if Plaintiff does, in fact, seek leave to amend her Complaint to allege additional information against the TCV Defendants.

Given the foregoing, the Court **GRANTS** the TCV Defendants' Motion to Dismiss, but **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claims against the TCV Defendants.

/ / /

/ / /

## II. The Primary Defendants' Motion to Dismiss

Prior to analyzing the substance of the TCAC's alter ego allegations, the Court must first address several threshold issues. Accordingly, the Court discusses in the following order (A) whether it was or is permissible for Plaintiff to add Defendants IBH and JustFab for the first time in the TCAC; (B) whether Plaintiff may rely on pleadings in other state-court actions to bolster her own in this Court; and (C) the plausibility of Plaintiff's alter ego allegations against each of the remaining Defendants.

### A. *The Addition of Defendants IBH and JustFab*

Defendants urge that the TCAC should be dismissed as to Defendants IBH and JustFab because Plaintiff's recent naming of the Defendants contravenes both the Court's Prior MTD Order and the Federal Rules of Civil Procedure. (Mot. to Dismiss 4.) Plaintiff counters that "[n]othing in the Court's [O]rder precluded Plaintiff from including additional claims or defendants as necessary to cure the deficiencies identified[,]" and that, even if the Court's Prior MTD Order did limit the scope of Plaintiff's amendment, our Circuit's admonition that leave to amend should be granted "with extreme liberality" counsels in favor of permitting the addition of Defendants IBH and JustFab. (Opp'n 19–23.) The Court agrees with Plaintiff.

Specifically, the Court's prior Order, while validly subject to either party's interpretation, did not expressly limit Plaintiff's amendment to only the previously named Defendants. And Plaintiff makes a solid showing that she did not know of Defendants IBH and JustFab prior to April 20, 2016, which was both the date on which the Second Amended Complaint was filed in the *Bank of America* action and several months after Plaintiff here filed her previous complaint. Finally, our Circuit's highly permissive stance towards amendment counsels in favor of permitting the addition of these two Defendants. This is especially true where, as here, many of the defendant parties are interrelated, the case has not proceeded to discovery, and the IBH and JustFab Defendants have already produced discovery in a state court action regarding their potential alter ego liability for largely the same underlying factual conduct here at issue. *Eminence Capital, LLC v. Aspeon, Inc.*, 316

F.3d 1048, 1052 (9th Cir. 2003) ("Absent prejudice, or a strong showing of any . . . [other] factors, there exists a <u>presumption</u> under Rule 15(a) in favor of granting leave to amend." (emphasis original)).

Accordingly, the Court concludes that dismissing Defendants IBH and JustFab is inappropriate on these grounds.

### *B. Reliance on Other Pleadings*

Defendants argue that "the Court should strike Plaintiff's allegations in the TCAC to the extent they rely on or refer to unproven allegations from the" related state-court actions. (MTD 9–10 (citing cases).) Plaintiff attempts to distinguish Defendants' cited cases in support and argues that to strike "citations to primary documents that support [Plaintiff's] factual allegations . . . is absurd." (Opp'n 23.) The Court partially agrees with both parties.

Although our Circuit has not squarely addressed this issue, this Court agrees that unproven state-court allegations may not validly support a plaintiff's cause of action in this Court. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("[R]eferences to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f) of the Federal Rules of Civil Procedure."); *see also Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1203 (N.D. Cal. 2012) (noting that "as other courts have found, allegations from other complaints or documents, which are unproved and are contested, may not be used to establish facts to demonstrate scienter" and collecting cases). In particular, it is the plaintiff in the other, state-court case that has knowledge of the facts underlying his complaint. And if the Court were here to accept as sufficient the current, federal plaintiff's "adoption" of those bare state-court pleadings, then "two plaintiffs could file separate actions each relying on the allegations in the other's complaint and both would state a claim . . . ." *In re Apollo Grp., Inc. Sec. Litig.*, No. CV-10-1735-PHX-JAT, 2011 WL 5101787, at *10 (D. Ariz. Oct.
///

27, 2011). "Clearly, [the Federal Rules of Civil Procedure] do not allow this type of pleading loophole." *Id.* [1]

However, a complaint is not always composed solely of bare allegations. In particular, Plaintiff here at times points to specific "primary documents attached to those [state-court] complaints, such as deposition transcripts, emails, accounts and articles of incorporation." (Opp'n 23.) Because these documents in effect mostly speak for themselves, there is no reason to bar Plaintiff from relying on these attachments to the state-court complaints. *See, e.g.*, *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 768 (S.D.N.Y. 2012) ("It makes little sense to say that information from such a study—which the [complaint] could unquestionably rely on if it were mentioned in a news clipping or public testimony—is immaterial simply because it is conveyed in an unadjudicated complaint.").

In sum, the Court agrees that Plaintiff may not rely on the unsubstantiated allegations in the attached state-court complaints to defeat these Motions to Dismiss. However, where appropriate, the Court will consider the various primary documents attached to those complaints.[2]

///

///

///

---

[1] The Court notes that in the present case the *Hirsch* Action might stand on different footing, given that Sensa Products, LLC is there the named Plaintiff. However, the *Hirsch* Action is devoid of any allegations regarding the Defendants who are the subject of these Motions to Dismiss. (*See generally* TCAC Ex. J.) Accordingly, the Court need not consider this argument at this time.

[2] Given the foregoing, the Court will not strike any portion of the state-court complaints, but instead will simply not rely on any unsubstantiated allegations. More specifically, Rule 12(f) permits a court to strike "any redundant, immaterial, impertinent, or scandalous matter." In the present case, the attached state-court complaints come from cases that are still being adjudicated, and therefore the relevant allegations cannot as a matter of law be said to fit into any of these categories at this time. *See, e.g.*, *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (explaining that district courts enjoy wide discretion under Rule 12(f) and defining "immaterial" and "impertinent" as having no "essential[,]" "important[,]" or "necessary" relationship to suit), *rev'd on other grounds*, 510 U.S. 517 (1994).

### C. The Plausibility of Plaintiff's Alter Ego Allegations

Because various allegations overlap, the Court addresses several of the relevant Defendants together in the following order: (i) JustFab and IBH; (ii) Chadwick; (iii) Goldenberg and Ressler.

### (i) JustFab and IBH

Defendants argue that both IBH and JustFab should be dismissed due to an insufficient showing under either alter-ego prong, and that dismissal of JustFab is especially warranted given that the "TCAC is bereft of <u>any</u> allegations that JustFab had any ownership in or control of the Sensa Entities." (MTD 9 (emphasis original).) Plaintiff responds that JustFab, IBH, and other corporate components of the "Sensa Entities" were "operated as a single enterprise such that they should respond, as a whole, for the liabilities that arose from the Sensa fraud." (Opp'n 15.) The Court agrees with Plaintiff.

"Generally, alter ego liability is reserved for the parent-subsidiary relationship." *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249 (1991). However, California courts have recognized a "single-enterprise rule" where "liability can be found between sister companies." *Id.*

> "In effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it. The court thus has constructed for purposes of imposing liability an entity unknown to any secretary of state comprising assets and liabilities of two or more legal personalities; endowed that entity with the assets of both, and charged it with the liabilities of one or both."

*Id.* at 1249–50 (quoting 2 Marsh's Cal. Corp. Law § 16.23, p. 1416 (3d ed. 1990)). In the present case, although JustFab might be treated differently from IBH under the traditional, parent-subsidiary analytical framework, Plaintiff focuses her Opposition for both Defendants on the single-enterprise rule. Nonetheless, the Court concludes that Plaintiff states a plausible claim against both Defendants under the "single-enterprise" rule.

For instance, Plaintiff alleges that the Sensa Entities, JustFab, and IBH were all headquartered in the same building, and engaged in making "intercompany loans" that "generally had no formal agreements, bargained for consideration, or loan payment schedule." (TCAC ¶ 135(a), (e).) Plaintiff provides specific examples, such as that (1) "IBI released JustFab of nearly $20,000,000 in debt for no consideration[,]" thus "solely benefit[ting] IB Holding, JustFab and their owners[,]" (*id.* ¶ 135(f)); (2) "IBI provided $10,000,000 to IB Holding to purchase JustFab shares[,]" (*id.* ¶ 135(g)); and (3) "Financial statements for years 2012 and 2013 show that JustFab and IB Holding prepared consolidated financials and filed a unitary tax return with IBI in 2012[,]" (*id.* ¶ 135(h)). And ownership was largely consolidated between all of the entities—IBI owned 90% of Sensa Products, and IBH in turn at least partially owned IBI and JustFab.[3] The end result of these (and allegedly other) transfers and the multi–million-dollar settlement with the FTC is that, despite Sensa sales of nearly $364 million from 2008-2012, (*id.* ¶ 12), Sensa Products, LLC was assigned to the benefit of creditors on October 6, 2014, (*id.* ¶ 14). Taken together, these allegations demonstrate a plausible unity of interest under the single enterprise framework. *See Tran v. Farmers Grp., Inc.*, 104 Cal. App. 4th 1202, 1219 (2002), *as modified on denial of reh'g* (Jan. 27, 2003) (noting that single-enterprise theory requires there to be "such a unity of interest and ownership that the separate corporate personalities are merged, so that one corporation is a mere adjunct of another or the two companies form a single enterprise").

Plaintiffs also satisfy the inequitable result prong by alleging sufficient factual material to suggest that Sensa first deceived consumers into purchasing a non-effective product and then strategically transferred money between various related corporations in order to safeguard the proceeds from the deception. To now shield Defendants IBH and JustFab from liability would both be inequitable and sanction a fraud. *See, e.g.*, *Doe v.*

---

[3] Plaintiffs indicate that "ownership interest in either IBI or JustFab could only be acquired indirectly through ownership of IBH stock." (Opp'n 16.) However, this specific assertion comes from the unproven allegations in the *Bank of America* Action and therefore cannot be credited as true. (*Supra* Section II.B.)

*Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001) ("[U]nder California law, 'inadequate capitalization of a subsidiary may alone be a basis for holding the parent corporation liable for the acts of the subsidiary.' " (quoting *Slottow v. Am. Cas. Co. of Reading, Penn.*, 10 F.3d 1355, 1360 (9th Cir. 1993))), *abrogated on other grounds by Williams v. Yamaha Motor Co. Ltd.*, __ F.3d __, 2017 WL 1101095 (9th Cir. Mar. 24, 2017).

Taken the foregoing in concert, Plaintiff has plausibly pled sufficient facts regarding unity of interest via inadequate capitalization, shared equitable ownership, and shared business locations to suggest that an inequitable result would inhere if Defendants IBH and JustFab are not exposed to liabilty under an alter ego theory. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss the TCAC as against Defendants IBH and JustFab.

        *(ii)    Chadwick*

Defendants argue that the same deficiencies the Court previously identified regarding Plaintiff's allegations against Defendant Chadwick, (Prior MTD Order 7–8), remain, and that Plaintiff's only additional allegations "are impermissibly conclusory" and therefore insufficient to state a plausible alter ego relationship. (MTD 12–14.) Plaintiff responds by reasserting the allegations contained in the TCAC. (Opp'n 13–15.) The Court agrees with Defendants.

As the Court previously held, Plaintiff's allegations that Defendant Chadwick "had 'day-to-day' management duties" and "continued marketing Sensa even after the FTC judgment" do not plausibly demonstrate " 'that the separate personalities of the corporation and the individual . . . no longer exist[ed] . . . .' " (Prior MTD Order 8 (quoting *KEMA, Inc. v. Koperwhats*, C091587-MMC, 2010 WL 3464737, at *8 (N.D. Cal. Sept. 1, 2010)).) Accordingly, here these allegations again fail. And Plaintiff's only further original allegations are either (1) entirely conclusory, (*e.g.*, TCAC ¶¶ 140(b) ("As president of the Sensa Entities Defendant Chadwick participated in, ratified and/or endorsed Defendant Goldenberg's release of around $20,000,000 in JustFab receivables, despite no consideration or benefit to the Sensa entities."); 140(d) ("Defendant Chadwick was

instrumental in controlling the flow of capital across the web of Defendant Entities."); 140(j) ("Plaintiff alleges that, based on Dr. Hirsch's compensation structure, as well as the other de-capitalization schemes, Defendant Chadwick[] was compensated through advancements that de-capitalized the Sensa Entities and hid the ill-gotten gains of the Sensa fraud.")); (2) specific, but innocuous, (*id.* ¶ 140(e) ("From April 2011 until September 11, 2013, Defendant Chadwick discussed the potential implication of an FTC fine ranging from $65,000,000 to $45,000,000 with Ressler[,] Goldenberg and Defendant Entities.")); or (3) potentially incriminating, but non-specific, (*id.* ¶ 140(h) ("Defendant Chadwick instructed Ressler and the Sensa Entities Board to not disclose the true financial state of the Sensa Entities[] to creditors.")). Finally, the only allegation validly incorporated from the state-court complaints is an email between Kristin Chadwick and four other Sensa-related individuals discussing a transfer of approximately $28 million between Sensa and IBI; $26.5 million of the sum would satisfy the FTC settlement, and the remaining amount went to "the deposit account held in the name of Intelligent Beauty." (TCAC Ex. K at 265–266, ECF No. 76-4, 424–25.) But this allegation—as confirmed by its use in the underlying state-court complaint—is more appropriately geared towards general "single-enterprise" allegations against Sensa and its various related entities. (*Id.* at 9 (state-court complaint using email to support allegation that "[t]he Funds to pay the fine the FTC imposed on IBI came from the sale of a purported 'separate' affiliated entity, Dermstore, where the proceeds from its sale to Target generated $100,000,000 that was divided up among other affiliated entities . . . .").) It does nothing to demonstrate that Defendant Chadwick herself so dominated and controlled the Sensa companies that it would be plausible to conclude there was little to no separation between them.

Given the foregoing, the Court again concludes that Plaintiff fails to state a plausible theory of alter ego liability as against Defendant Chadwick. Accordingly, the Court **DISMISSES** Plaintiff's Complaint as against Defendant Chadwick.

/ / /

/ / /

### *(iii) Goldenberg and Ressler*

Defendants argue that the same deficiencies the Court previously identified regarding Plaintiff's allegations against Defendants Goldenberg and Ressler, (Prior MTD Order 9–10), remain, and that Plaintiff's only additional allegations are merely "regurgitate[ed]" from the state-court complaints and are independently "insufficient to state a claim here." (MTD 14–18.) Plaintiff responds by reasserting the allegations contained in the TCAC and arguing that together they "describe how Defendants Goldenberg and Ressler controlled the flow of capital across the Defendant entities and used their positions of authority within the Sensa Entities to actively de-capitalize the Sensa Entities in the face of looming liability to the FTC, creditors and consumers." (Opp'n 9–15.) The Court agrees with Defendants.

Although Plaintiff's Opposition paints a picture of Defendants Goldenberg and Ressler unilaterally taking extreme actions to safeguard the profits of the alleged Sensa fraud, the TCAC's allegations do not adequately support that conclusion. Specifically, much of Plaintiff's argument turns on the fact that Goldenberg and Ressler were "owners, managers and officers," (Opp'n 9–10), and that therefore it necessarily follows that Defendants Goldenberg and Ressler took certain actions on behalf of the corporation, (*compare, e.g.*, *id.* ("Indeed, the Sensa Entities were so undercapitalized at this time that Defendants Goldenberg and Ressler paid the FTC fine with proceeds from the sale of Dermstore, Inc., supposedly a separate entity." (citing TCAC Ex. K at 9, 61, 265–66)), *with, e.g.*, TCAC Ex. K at 9, 61, 265–66 (nowhere specifying who paid or authorized payment of the FTC fine)).) But this lack of specificity is directly contrary to the alter ego requirement that "the corporation is not only influenced and governed by that [particular] person, but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased . . . ." *Firstmark*, 859 F.2d at 94 (emphasis in original) (quoting *Wood v. Elling Corp.*, 572 P.2d 755, 761–62 n.9 (1977) (emphasis in original)). Accordingly, all Plaintiff's allegations of this type fail to sufficiently allege a plausible alter ego relationship. (*E.g.,* Opp'n at 10 (arguing that "[a]s

owners and managers of the Sensa Entities, Goldenberg and Ressler authorized informal intercompany loans with no collateral, repayment plan, or bargained for consideration[,]" but relying on allegations that do not explain how intercompany loans were made, or by whom, except to say that "these transactions were often executed by a single employee of the enterprise, Heidi Crane, who served as CFO for JustFab and IBI"); 11 (arguing that "Defendants Goldenberg and Ressler, as owners, directors and officers of IBI, caused IBI to forego its right to collect nearly $20 million from JustFab[,]" but relying on allegations contained in *Bank of America* complaint without underlying documentation); 11–12 (arguing that "Defendants Goldenberg and Ressler organized the compensation structure of Dr. Hirsch" and that "[a]s creditor and consumer liabilities loomed . . . continued to bail money from Sensa Products into the pockets of Defendant Hirsch[,]" but relying on *Hirsch* complaint for support where *Hirsch* complaint attached five amendments to the underlying IBI LLC agreement and only <u>one</u> amendment was signed by Defendant Goldenberg and was signed <u>prior to Sensa's insolvency</u>).)

    Given the foregoing, Plaintiff has again failed to specifically allege that either Defendant Goldenberg or Defendant Ressler so dominated and controlled the Sensa companies that it would be plausible to conclude there was little to no separation between them. Accordingly, the Court again **DISMISSES** Plaintiff's Complaint as against Defendant Goldenberg and Defendant Ressler for failure to plausibly plead an alter ego relationship between these Defendants and the Sensa companies.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

# CONCLUSION

Given the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss regarding the TCV Defendants and Defendants Goldenberg, Ressler, and Chadwick, and **DENIES** Defendants' Motion to Dismiss regarding Defendants JustFab and IBH. Although the Court entertains serious doubts regarding Plaintiff's ability to successfully amend her Complaint against Defendants Goldenberg, Ressler, and Chadwick, the Court **GRANTS PLAINTIFF LIMITED LEAVE TO AMEND** regarding these three specific Defendants. To be clear, Plaintiff may <u>not</u> add additional Defendants prior to seeking further leave of this Court.[4]

**IT IS SO ORDERED.**

Dated: April 26, 2017

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

---

[4] Defendants request that additional leave to amend "should be conditioned on Plaintiff paying costs." (MTD 18–19); *see Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1514 (9th Cir. 1995) ("[A] district court, in its discretion, may impose costs pursuant to Rule 15 as a condition of granting leave to amend in order to compensate the opposing party for additional costs incurred because the original pleading was faulty."). Although Plaintiff did not oppose this aspect of Defendants' Motion, the Court nonetheless declines to impose costs at this time, especially in light of the split ruling on theses Motions to Dismiss. However, should Plaintiff again amend her complaint and Defendants again move to dismiss, Plaintiff would be well served to oppose this aspect of Defendants' motion.

16
14-cv-51 JLS WVG