UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CONDE, et al., | Case No.: 14-cv-51 JLS WVG |
| Plaintiffs, | |
| v. | **ORDER DENYING WITHOUT PREJUDICE PLAINTIFF SUSAN GRACE STOKES' MOTION FOR CLASS CERTIFICATION** |
| SENSA, et al., | |
| Defendants. | (ECF No. 115) |

Presently before the Court is Plaintiff Susan Grace Stokes' Motion for Class Certification ("Mot.," ECF No. 115). Also before the Court is Defendants IB Holding, LLC and TechStyle, Inc.'s Opposition to Plaintiff's Motion ("Opp'n," ECF No. 119) and Plaintiff's Reply in Support of Her Motion ("Reply," ECF No. 123). The Court heard oral argument on September 4, 2018. After considering the Parties arguments' and the law, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Class Certification.

## BACKGROUND

This case was originally brought by José Conde against Sensa Products, LLC ("Sensa"). ECF No. 1. There were three pending related cases: *Conde v. Sensa et al.*, Case No. 14-CV-51 JLS (WVG) (S.D. Cal., filed Jan. 7, 2014), *Delaney et al. v. Sensa et al.*, Case No. 14-CV-2120 JLS (WVG) (S.D. Cal., filed Sept. 8, 2014), and *Stokes v. Sensa et al.*, Case No. 14-CV-2325 JLS (WVG) (S.D. Cal., filed Oct. 1, 2014). The plaintiffs in

1

*Delaney* moved the Court for an order consolidating the three cases. ECF No. 17.[1] The Court granted the motion and consolidated the cases. ECF No. 32. All cases were brought against Sensa, but GNC was another named defendant in the *Delaney* case. After consolidation, all plaintiffs then filed an amended complaint against Sensa, Dr. Alan Hirsh, and GNC. ECF No. 33. The *Delaney* Plaintiffs and GNC settled, and Delaney dismissed the class claims against GNC. ECF No. 53. It appears that all named plaintiffs except Stokes were a part of the settlement, because after the settlement and dismissal of GNC, only Stokes moved to file an amended complaint. ECF No. 56. The Court granted the request, and Stokes filed an amended complaint against Sensa and various other companies and individuals. ECF No. 60.

In 2014, the Federal Trade Commission ("FTC") filed a complaint against Sensa, Adam Goldenberg, and Dr. Hirsch, (collectively, "FTC Defendants") alleging unfair or deceptive acts or practices and false advertisements.[2] Request for Judicial Notice ("RJN"), ECF No. 119-3 at 13.[3] The FTC and the FTC Defendants entered into a stipulated judgment for $46.5 million. *Id.* at 25; Third Consolidated Amended Class Action Complaint ("TAC"), ECF No. 76 ¶ 13. As part of the settlement, the FTC Defendants were restrained from, among other things, falsely representing that any product causes weight loss. RJN 20. The amount owed was later reduced to $26.5 million because of Sensa's "deteriorating financial condition." Opp'n at 10. The FTC then mailed over 477,000 refund checks to consumers who bought Sensa's products. *Id.* In connection with the FTC matter, in late 2013 or early 2014, "Sensa Products changed the 'lose up to 30lbs or more

_____

[1] Unless otherwise indicated, ECF numbers relate to filings in the lead case, Case Number 14-CV-51.

[2] Mr. Goldenberg is a director and officer of Sensa, and Dr. Hirsch conducted studies regarding the Sensa products.

[3] Defendants request the Court take judicial notice of the FTC Settlement (ECF No. 119-3). The same settlement is attached to Plaintiff's Complaint (ECF No. 70-2, at 20–44). The Court may take judicial notice of documents incorporated into the complaint by reference. *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011). The Court therefore **GRANTS** Defendants' request for judicial notice.

in just 6 months' statement to '9.5 pounds in 6 months' and/or '10 pounds in 3+ months.'" Declaration of Kristin Chadwick in Support of Mot. ("Chadwick Decl."), ECF No. 119-1 ¶ 6. In October 2014, Sensa declared bankruptcy. Opp'n at 14.

The bankruptcy did not end this case. Plaintiff Stokes' TAC is brought against Sensa Products, LLC; Sensa, Inc. (f/k/a Intelligent Beauty, Inc.); IB Holding, LLC (a/k/a Intelligent Beauty Holding, LLC); TechStyle, Inc. (f/k/a JustFab, Inc. and Just Fabulous, Inc.); Dr. Alan R. Hirsch; Don Ressler; Adam Goldenberg; Kristen Chadwick; TCV VI, L.P; TCV Technology Crossover Ventures; and John Drew. *See generally* ECF No. 76. Plaintiff alleges Sensa was part of an "interconnected web of entities" operating as a single enterprise. Mot. at 7. Plaintiff alleges "the enterprise, acting through IB Holding, LLC ("IBH"), and TechStyle, Inc., f/k/a JustFab, Inc.'s ("JustFab") (collectively, the "Solvent Defendants") used unrecoverable or forgiven loans to systematically strip the assets of IB[H] and Sensa Products." *Id.*

The summary of the allegations are as follows: Sensa produced various weight-loss products, which were "tastant crystals" or "sprinkles" that users would sprinkle on their food. TAC ¶ 2. As marketed by Sensa, when the users smelled and tasted the crystals, the crystals would trigger the user's "I feel full" signal and the user would therefore eat less food. *Id.* ¶ 3. Originally, Sensa marketed that the products would allow users to "lose up to 30lbs or more in just 6 months" without requiring the user to diet or exercise. TAC ¶¶ 4–5; Opp'n at 12. As noted above, this marketing was changed in 2013/2014 to lose "'9.5 pounds in 6 months' and/or '10 pounds in 3+ months.'" Chadwick Decl. ¶ 6.

Plaintiff brings causes of action generally alleging false and misleading advertising/marketing, unfair competition, and breach of warranties. The products at issue are: Sensa Weight-Loss System; Sensa for Men Weight-Loss System; and Sensa Advanced Weight-Loss System (hereinafter, the "Class Products"). (Mot. at 7 n.1.) Plaintiff states she relied on the labeling for the Class Products and alleges the Products are ineffective, the Products have not been "clinically shown" to cause weight loss, and the system is not "supported by impressive clinical results." TAC ¶¶ 7–8. Plaintiff seeks

certification of a nationwide class defined as "all persons in the United States who purchased Defendants' Sensa Weight-Loss System, on or after August 22, 2012."

## LEGAL STANDARD

Motions for class certification proceed under Rule 23(a) of the Federal Rules of Civil Procedure. Rule 23(a) provides four prerequisites to a class action: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"), and (4) the representative parties will fairly and adequately protect the interests of the class ("adequate representation"). Fed. R. Civ. P. 23(a).

A proposed class must also satisfy one of the subdivisions of Rule 23(b). Here, Plaintiff seeks to proceed under Rule 23(b)(3), which requires that "the court find[] that the [common questions] predominate over any questions affecting only individual members ['predominance'], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ['superiority']." The relevant factors in this inquiry include the class members' interest in individually controlling the litigation, other litigation already commenced, the desirability (or not) of consolidating the litigation in this forum, and manageability. Fed. R. Civ. P. 23(b)(3)(A)–(D).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (internal quotations omitted). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* The court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir.

1992). A weighing of competing evidence, however, is inappropriate at this stage of the litigation. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 605 (C.D. Cal. 2005).

## ANALYSIS

### I. Standing

Under Article III of the United States Constitution, a federal court may only adjudicate an action if it constitutes a justiciable "case" or a "controversy" that has real consequences for the parties. *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A threshold requirement for justiciability in federal court is that the plaintiff have standing to assert the claims brought. *Id.* "[S]tanding requires that (1) the plaintiff suffered an injury in fact . . . , (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 594–95 (9th Cir. 2012) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)).

Defendants contest Plaintiff's standing in various regards: (1) Plaintiff is a Florida resident who neither purchased any Sensa products in California during the class period nor visited or purchased products from the Sensa websites; (2) Plaintiff did not suffer an injury because she was happy with the products and accomplished her goal of maintaining her weight; and (3) Plaintiff never purchased two of the Class Products: Sensa for Men and Sensa Advanced. Opp'n at 15–17. The Court addresses each argument in turn.

#### A. Florida Residency and Purchase

Plaintiff does not contest that she is a Florida resident and that she did not purchase the Class Product in California or from the Sensa website. *See* TAC ¶ 27. She purchased the Class Product multiple times, first after watching an infomercial on ShopNBC and later at a GNC store. ECF No. 119-2, at 38, 44. Plaintiff argues, however, that this does not negate her standing as she was deceived by a California defendant's conduct and subsequently purchased the Product.

/ / /

The Court in *Forcellati v. Hyland's Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012), addressed a similar issue. In that case, the defendants, which were headquartered in California, argued that the plaintiff, a New Jersey resident, lacked standing to bring consumer protection claims in California. *Id.* at 1160. The court distinguished two issues: the ability of a nonresident plaintiff to assert a claim under California law and a choice-of-law analysis. *Id.* The court determined that the defendants were making a choice-of-law argument rather than a standing argument and that the plaintiff did not lack standing to bring claims under California law.

Here, Defendants similarly make a choice-of-law argument, not a proper standing argument. As in *Forcellati*, Defendants do not argue that any of the Article III standing requirements are not met. *See id.* at 1060. Rather, Plaintiff here seeks to certify a nationwide class of persons who purchased a product in the United States during the relevant time period. Plaintiff Stokes certainly did this. This confers standing on her; whether California law applies is a separate issue. Further, the argument that Stokes did not purchase a product through the website does not mean she has no standing to bring this case. The purposed class Plaintiff Stokes seeks to certify does not specify that the members purchased the product through the website, even if it turns out most of them did so. *See* Opp'n at 9 (stating 84% of purchasers bought the product online). This argument goes towards the typicality requirement, which will be addressed below. *See infra* Section II.C.

## B. Satisfaction With the Product

Defendants cite to Ms. Stokes' deposition, at which she testified that she was satisfied with the Class Product, purchased it continually for five years, and achieved her goal of maintaining her weight even though she was not exercising due to an injury. Opp'n at 16.[4] Defendants argue that Ms. Stokes therefore lacks standing to bring this case. To

---

[4] To contest this, Plaintiff submitted a declaration attached to her Reply, in which she states that she "purchased Sensa for approximately four years because [she] believed the advertisements that said it was an effective weight loss product." "Stokes Decl.," ECF No. 123-1 ¶ 4. She states that, although she believed the advertisements at the time, she "now know[s] that Sensa did not work." *Id.* ¶ 5.

support this argument, Defendants cite to *Hovsepian v. Apple, Inc.*, in which the court determined the class was not ascertainable because "it includes members who have not experienced any problems with their [Class Products]. Such members have no injury and no standing to sue." No. 08-5788 JF (PVT), 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009); *see also Moheb v. Nutramax Labs. Inc.*, No. CV 12-3633-JFW (JCx), 2012 WL 6951904, at *3 (C.D. Cal. Sept. 4, 2012) (determining members who derived benefit from the product and "are satisfied users" have no injury and no standing to sue). *Hovespian* and *Moheb*, like the present case, also involved false advertising claims. The courts in those cases, however, provided little analysis supporting their finding of no standing, nor did they define what constituted an "injury in fact" for standing purposes.

In contrast, other courts have held that standing is not negated in situations similar to the present case simply because the purchaser was satisfied with the product. In *McCrary v. Elations Co.*, No. EDCV 13-242 JGB (OPx), 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014), the court found "unpersuasive" the defendant's "concern that some putative class members were happy with [the product] and thus were uninjured." *Id.* at *14. The court cited *In re Google AdWords Litigation*, No. 5:08–CV–3369, 2012 WL 28068, at *10 (N.D. Cal. Jan. 5, 2012), which held "the requirement of concrete injury is satisfied when the Plaintiffs and class members in UCL and FAL actions suffer an economic loss caused by the defendant, namely the purchase of defendant's product containing misrepresentations." The court in *McCrary* also cited *Ries v. Arizona Beverages USA*, 287 F.R.D. 523 (N.D. Cal. 2012), which held:

> The focus of the [Unfair Competition Law ("UCL")] and [False Advertising Law ("FAL")] is on the actions of the defendants, not on the subjective state of mind of the class members. All of the proposed class members would have purchased the product bearing the alleged misrepresentations. Such a showing of concrete injury under the UCL and FAL is sufficient to establish Article III standing.

*Ries*, 287 F.R.D. at 536 (internal citation omitted).

7

The Court agrees with the analysis of *Google* and *Ries*. Plaintiff Stokes' alleged satisfaction with the Class Product at the time she was using it, or the fact that she did not gain weight while using the Class Product, is insufficient to strip her of standing. Satisfaction (or lack thereof) is not the focus of the "injury" requirement for a false advertising claim: A product can be falsely advertised even if people enjoy it. Plaintiff Stokes purchased the Class Product after viewing the advertisements and has standing to claim that the advertisements were false and that she was damaged thereby.

## C. The Three Class Products

Plaintiff testified that she has never heard of or purchased Sensa for Men or Sensa Advanced. ECF No. 119-2, at 11–12. Defendants argue that Plaintiff lacks standing to bring claims based on the two Class Products different than the one she purchased. Opp'n at 17. Cases regarding multiple Class Products and how this relates to standing vary.

In *Azimpour v. Sears, Roebuck & Co.*, 15cv2798-JLS (WVG), 2017 WL 1496255 (S.D. Cal. Apr. 26, 2017), for example, this Court found that the named representative had standing despite the fact that she purchased a different pillow than the class members. *See id.* at *5. The Court found that "[p]laintiff's allegations are based on Defendant's allegedly deceptive pricing scheme[,] which uniformly applies to and affects all products." *Id.* In sum, the case "is not about a pillow—it is about a price tag." *Id.* In that decision, the Court cited *Branca v. Nordstrom, Inc.*, No. 14CV2062-MMA (JMA), 2015 WL 10436858 (S.D. Cal. Oct. 9, 2015), in which the court had found that "it is immaterial for the purposes of [plaintiff's] claims whether one purchased a pair of shoes versus a hat, so long as the item bore a 'Compare At' tag. . . . Rather, his claims relate to the consistent format of the tags." *Id.* at *5. These cases lead to the conclusion that even if the products are different, as long as the alleged problem with the products (such as the marketing or misrepresentation) is the same, the plaintiff has standing to bring the case.

In *Tria v. Innovation Ventures, LLC*, No. CV 11-7135-GW(PJWx), 2013 WL 12324181 (C.D. Cal. Feb. 25, 2013), by contrast, the court held that "a plaintiff has no injury-in-fact with respect to products she has not purchased, although she has purchased

similar products, at least where the products she has and has not purchased are not effectively identical for purposes of the type of case brought." *Id.* at *3. The plaintiff did not have standing to pursue claims related to a product she did not purchase when there were "unquestionable distinctions in the types of statements that have been used to market or advertise" the two products. *Id.* Similarly, in *Dysthe v. Basic Research LLC*, No. CV 09-8013 AG (SSx), 2011 WL 5868307 (C.D. Cal. June 13, 2011), the court found the plaintiff did not have standing to pursue claims regarding Relacore when she purchased Relacore Extra. *Id.* at *4. The court reviewed the ingredients of the products and found "significant differences" between the products and the products' packaging and that the products are "marketed and sold separately by Defendants." *Id.* at *5.

Here, Defendants attempt to distinguish the three Class Products: the original Sensa product contains "primarily maltodextrin, tricalcium phosphate, silica, and certain natural and artificial flavors," whereas Sensa for Men is "specially formulated for men" and "contained or concentrated and/or different flavors than the original product" and Sensa Advanced contained a new ingredient, chromium, "to provide metabolism support." Opp'n at 12. Defendants also argue that "[t]he accompanying marketing and representations about these three products were correspondingly different and tailored to the product." *Id.*

The three Class Products are clearly marketed under the same general theme: use Sensa and lose weight. The fact that the Class Products contain different "flavors" or one additional ingredient does not mean that the Class Products are significantly different. *See Dysthe*, 2011 WL 5868307, at *5. Further, the only evidence to support Defendants' argument that the marketing for the Products differed is the change in marketing in 2013 or 2014: Sensa Advanced did not promote as much weight loss as did the other Products. But, the three Class Products are "effectively identical" with regards to the underlying purpose of this case—alleged false labeling and misrepresentation. *Tria*, 2013 WL 12324181, at *3. Because the ingredients of the three Class Products are very similar and the Class Products are marketed to consumers for similar purposes, the Court finds Plaintiff has standing to bring claims relating to all three Class Products.

The Court therefore finds that Plaintiff has standing to bring this case.

## II.    Rule 23(a) Requirements

Plaintiff must establish that the proposed class satisfies the four requirements of Rule 23(a). Defendants do not contest that Plaintiff's proposed class meets the Rule 23(a) requirements of numerosity and commonality. The Court analyzes these requirements briefly, focusing on the contested elements of typicality and adequacy.

### A.    *Numerosity*

"[A] proposed class must be 'so numerous that joinder of all members is impracticable.'" *Rannis v. Recchia*, 380 Fed. App'x 646, 650 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(1)). While "[t]he numerosity requirement is not tied to any fixed numerical threshold[,] . . . [i]n general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Id.* at 651.

Plaintiff does not provide the Court with an approximate number of class members, instead providing the confidential sum of money that Defendants have earned through sale of the Class Products. Mot. at 20. Given this large value, and given that Defendants do not dispute the numerosity of the proposed class, the Court finds that the number of members is sufficiently numerous that joinder is impracticable, and therefore finds that this requirement is fulfilled. *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 501 (S.D. Cal. 2013) ("In ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings.").

### B.    *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an

issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Plaintiff asserts that classwide liability hinges on many common questions, including whether the marketing and advertisements for Sensa were false, whether Defendants' conduct violated various laws, whether Defendants' conduct breached warranties, and whether Defendants made negligent misrepresentations. Mot. at 21; TAC ¶ 147. There therefore exists at least one common question as to Plaintiff's claims, and the Court finds that the commonality requirement is satisfied.

### C. *Typicality*

The Ninth Circuit has explained, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Staton*, 327 F.3d at 957; *Hanlon*, 150 F.3d at 1019. The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).

Plaintiff Stokes alleges typicality is satisfied because she and the class members purchased a Class Product and "were exposed to the same name ('Sensa Weight-Loss System') and a uniform branded message." Mot. at 23. Defendants make various arguments against this, many of which echo Defendants' dispute against Plaintiff's standing. Opp'n at 18–21. The Court addresses each of Defendants' arguments in turn.

### 1. *Plaintiff Did Not Purchase the Class Product to Lose Weight But to Maintain Her Weight at a Time When She Was Unable to Exercise*

Although Plaintiff Stokes may have purchased the Product for a different reason than other class members, *i.e.*, maintaining her weight vs. losing weight, she still suffered the same injury as the class members: monetary loss from purchasing a product based on alleged misrepresentations. Typicality does not turn on the "specific facts from which [the claim] arose." *Hanon*, 976 F.2d at 508. Thus, the Court finds that Plaintiff is not atypical

for this reason.

### 2. Plaintiff Experienced Side Effects From the Class Product

Defendants argue that Plaintiff Stokes is not typical because she experienced side effects from the Class Product. Plaintiff has filed a declaration stating she "is not seeking relief for the side effects [she] experienced from using Sensa. [She is] seeking a full refund of the purchase product of the product for [her]self and the other class members." Stokes Decl. ¶ 6. Therefore, Plaintiff Stokes is seeking the same relief as the class members and is not atypical for this reason.

### 3. Plaintiff Spent $5,000 on the Class Product, Used the Class Product for Five Years, and Was Satisfied With the Class Product

Defendants argue that Plaintiff Stokes was a satisfied customer who continued to purchase the Class Product over a five-year period and therefore is atypical of the other class members. Plaintiff now states she was not satisfied with the Class Product and was deceived by Defendants. Reply at 9. This contradicts her deposition testimony where she testified she was "satisfied with Sensa while . . . using it" and "Sensa was the answer for [her] to . . . be able to eat what [she] wanted without exercising." ECF No. 119-2 at 35. She testified her goal in buying Sensa was to maintain her weight, and she did indeed maintain her weight. *Id.* She continued to buy the product because she was satisfied with it. *Id.* at 74. Indeed, while Plaintiff Stokes's first purchase of the Class Product was induced by Defendants' advertisements, it appears Plaintiff's continued purchase of the Class Product was because she believed it was working for her.

"In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory.'" *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (citation omitted). Here, the legal theory is that Defendants falsely labeled the Class Products and that the Class Products do not deliver what is promised. Plaintiff also suffered the "same injury" as the class members—being subjected to false labeling and losing money. *See Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1983); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) (holding

that "individual experience with a product is irrelevant" because "the injury under the [Unfair Competition Law], [False Advertising Law,] and [Consumer Legal Remedies Act] is established by an objective test. Specifically, this objective test states that injury is shown where the consumer has purchased a product that is marketed with a material misrepresentation, that is, in a manner such that 'members of the public are likely to be deceived'").

It is irrelevant that Plaintiff Stokes liked the Class Product during the time she was using it—she is not seeking to represent a class of people who gained weight as a result of Sensa or disliked the Class Product. The Court therefore finds that Plaintiff Stokes is not atypical for this reason. *See Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 507 (6th Cir. 2015) (holding that, "although [defendant] argues that some class members were not injured because they kept buying [the Class Product]—a sign that [the Class Product] works, says [Defendant]—that is not the right way to think about 'injury' in the false-advertising context. The false-advertising laws at issue punish companies that sell products using advertising that misleads the reasonable consumer").

### 4. Plaintiff Used Only One of the Three Class Products

It is undeniable that Plaintiff used only one of three of the Class Products. In general, "[t]he typicality requirement does not mandate that the products purchased . . . must be the same as those of absent class members." *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. Mar. 28, 2010). But "[i]n cases involving a variety of products, courts, emphasizing that different products have different functions and different consumers, have held that a named plaintiff that purchased a different product than that purchased by unnamed plaintiffs fails to satisfy the typicality requirement of Rule 23(a)(3)." *Wiener v. Dannon Co.*, 255 F.R.D. 658, 666 (C.D. Cal. 2009).

In *Wiener*, the court determined that the proposed class representative had not established typicality because she only purchased one of the products, Activia, and did not purchase DanActive or Activia Light. *Id.* at 666. The defendant had made "different health benefit claims" for the three products, and the products "target[ed] consumers with

different health issues." *Id.* In sum, "the evidence needed to prove [plaintiff's] claims involving Activia, namely proof that Dannon's claim that *Bifidus Regularis* is clinically proven to regulate digestion is false or misleading, is not probative of the claims of unnamed class members who purchased DanActive, which require evidence that the claim that *L. Casei Immunitas* is clinically proven to strengthen the immune system is false or misleading." *Id.*

Here, unlike in *Wiener*, the Class Products all boast the same result: weight loss. And, while Sensa for Men obviously targeted males, there is no evidence that this Class Product was marketed any differently than the other two Class Products. As analyzed above, the marketing and ingredients for the three products are substantially similar. *See supra* Section I.C. Accordingly, the "various products purchased . . . do not negate a finding of typicality" because Plaintiff Stokes alleges that the class members' injuries "arise[] from a common wrong." *See Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 WL 8742757, at *11 (N.D. Cal. Dec. 21, 2010). Plaintiff's claims are therefore "reasonably co-extensive with those of absent class members," *Hanlon*, 150 F.3d at 1020, and the Court finds that Plaintiff is not atypical for this reason.

>    5. *Plaintiff Did Not See and Rely on All Representations by Sensa Because Sensa Changed Its Weight Loss Representations in 2013 or 2014*

Defendants state that in late 2013 or early 2014, "Sensa Products changed the 'lose up to 30lbs or more in just 6 months' statement to '9.5 pounds in 6 months' and/or '10 pounds in 3+ months.'" Chadwick Decl. ¶ 6. Defendants state Plaintiff Stokes never saw or read these new representations. Plaintiff Stokes argues this minor change is immaterial, and that the same evidence will be used to prove that both representations are false. Reply at 9. The Court agrees with Plaintiff: what is important is whether Defendants' misrepresentations were false or misleading. This will be the issue regardless of the change in advertising, as the advertising uniformly claims that users will lose weight after using the Class Product.

/ / /

### 6. *Plaintiff Did Not Purchase the Product Online and Never Saw Sensa's Website*

As mentioned above, Plaintiff Stokes purchased her product from a retail store and over the phone, not online. Defendants state that 84% of the class members purchased the Class Product online and Plaintiff Stokes is therefore atypical. Opp'n at 20. In support of their argument, Defendants cite to *McCrary*, in which the court excluded class members who purchased the product online because the proposed class definition required that the putative member be exposed to the "packaging and/or labeling of" the product." 2014 WL 1779243, at *11. The court reasoned that "[m]ost, if not all, online consumers would not have seen the packaging or labeling on the product prior to purchase." *Id.*

*McCrary* is clearly different from the present case. The class definition here does not include a requirement that a class member be exposed to a certain advertisement. In any event, Plaintiff Stokes testified she saw the Class Product advertised on an informercial on ShopNBC and saw ads on television. ECF No. 119-2 at 46, 73. Plaintiff Stokes also purchased the Class Product at the retail store and saw the box or advertisement there that stated it was a weight-loss product. The class members who purchased the Class Products online also saw ads similarly stating that the Class Products would help with weight loss. Given the uniform marketing, the different avenues of purchase here do not defeat typicality. *See Greenwood v. Compucredit Corp.*, No. C 08-4878 CW, 2010 WL 291842, at *4 (N.D. Cal. Jan. 19, 2010) ("The typicality requirement does not mandate that the products purchased [or] methods of purchase . . . be the same as those of the absent class members.") (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 261 (D.D.C. 2002)).

In sum, the Court finds that Plaintiff Stokes has established the "typicality" requirement for a class representative.

### D. Adequacy

Federal Rule of Civil Procedure 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "To determine whether the representation meets this standard, [courts] ask two questions: (1) Do the representative

14-cv-51 JLS WVG

plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

Defendants argue Plaintiff Stokes cannot adequately fulfill her duties as class representative because of her health issues. Opp'n at 21. Defendants state that, "[d]ue to health reasons, Stokes was not able to travel from Florida to California (i) in July 2015 for an Early Neutral Evaluation, (ii) in July 2017 for a second Early Neutral Evaluation, or (iii) in January 2018 for her deposition." *Id.* Plaintiff Stokes does not contest that she could not travel to these events, but states she was able to appear telephonically and that she was deposed in Florida.

Defendants further state that "Stokes also cannot attend trial in California," but this misrepresents Plaintiff's deposition testimony. Plaintiff testified that, "[i]f this case were to go to trial in California," she "would have to make arrangements." ECF No. 119-2 at 60. She testified that she does not know when she will be able to travel to California because she does not know what is going to happen. *Id.* at 61–62. Defendants cite to *Tria*, where the court found various reasons why the plaintiff was not a suitable class representative, one of which being the plaintiff testified she did not know whether she was willing to go to trial in the case. 2013 WL 12324181, at *8. *Tria* is inapplicable where, as here, the plaintiff appears to be willing to go to trial and willing to make arrangements should the time come. This does not make Plaintiff Stokes an inadequate representative.

Defendants also claim Plaintiff Stokes lacks sufficient knowledge to be the representative in this case. Opp'n at 21. In support, Defendants cite to Plaintiff Stokes' deposition, at which she testified she is not aware of any settlements with anybody in this case or dismissals of any defendants from the case. ECF No. 119-2 at 34. She testified that she does not know the "geographic parameters" of the proposed class, nor does she know whether she is seeking to represent men and women, a certain age group, or purchases made in a certain time period. *Id.* at 64–65. She was unable to define "alter ego" and does not know whether the concept has anything to do with the case. *Id.* at 71.

She also testified she believes there are other class representatives in the case. *Id.* at 164.

"Just where the dividing line is between what a class representative plaintiff should know herself and what she can safely leave to her counsel is somewhat unclear." *Tria*, 2013 WL 12324181, at *8. On the one hand, "[c]ourts have held that a class representative who is unfamiliar with the case will not serve the necessary role of check[ing] the otherwise unfettered discretion of counsel in prosecuting the suit. Courts have developed a standard of 'striking unfamiliarity' to assess a representative's adequacy in policing the prosecution of his or her lawsuit." *Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994) (citations omitted). On the other hand, courts have found named representatives to be adequate if they understand the alleged violations, the "underlying legal basis" of the action, or "the gist of the suit." *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2009 WL 281941, at *11 (N.D. Cal. Feb. 5, 2009) (collecting cases).

Here, Plaintiff Stokes has demonstrated that she has a general understanding of her claims. She testified that "[t]his is a class action." ECF No. 119-2 at 12. She also testified that she and the class members "believed in something," bought the Class Product, and lost money. *Id.* at 65. She testified that the class members "believed in what they were doing, and it was not true" and the Class Product "didn't work for them for some reason for another." *Id.*

Although the Court has some reservations regarding Plaintiff Stokes' knowledge of the complicated history of this case, it concludes that Plaintiff Stokes would adequately represent the class. Plaintiff Stokes could not travel to California for her deposition, but she did sit for a lengthy deposition in Florida. She was available to participate telephonically at both conferences with Magistrate Judge Gallo. Reply at 9. The Court is also encouraged by Plaintiff Stokes' statement that she "will do everything in [her] ability to attend" trial if it occurs and will do "what is necessary as the class representative in this case." Stokes Decl. ¶ 8. Further, Plaintiff Stokes understands the "gravamen of the claim" in this case. *See Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004). The Court finds that Plaintiff Stokes is sufficiently familiar with their claims to adequately

represent the members of the proposed class.

Class counsel also appears to be adequate, and the Court has already appointed Bursor & Fisher as interim class counsel in this case. ECF No. 32, at 7 (finding "Bursor & Fisher has demonstrated that it is capable of adequately and fairly representing Plaintiffs in this case"). Defendants have raised no concerns in this regard. Class counsel represent that they have extensive experience, and have thus far litigated the case vigorously. Consequently, the court concludes that Bursor & Fisher are able adequately to represent the class.

In sum, the Court finds that Plaintiff Stokes has demonstrated that she is an adequate class representative and that class counsel are also adequate. The adequacy requirement is therefore satisfied. Plaintiff Stokes has satisfied the four requirements of Rule 23(a) and the Court proceeds to analyze the requirements of Rule 23(b)(3).

## III.  Rule 23(b)(3) Requirements

Rule 23(b)(3) states that a class may be maintained if the requirements of Rule 23(a) are fulfilled and if "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A.  *Predominance of Common Issues*

The predominance analysis focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" to determine "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also* Fed. R. Civ. P. 23(b)(3) (to certify a class, the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members"). "Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (quotation marks omitted). A court must analyze these

elements to "determine which are subject to common proof and which are subject to individualized proof." *In re TFT-LCD I*, 267 F.R.D. at 310–11. Defendants argue that individual legal and factual issues will predominate in this matter and thus this requirement is not satisfied. Opp'n at 24.

### 1. Arbitration

Defendants first cite to the arbitration clause on Sensa's website, arguing this causes predominance issues. Sensa's website contains a provision that states all purchasers agree to arbitrate their claims on an individual basis. Opp'n at 24; *see* ECF No. 119-1 at 32 (term on the website stating: "Any controversy, claim or dispute arising out of or relating tin any way to . . . products purchased through the Site shall be resolved by final and binding arbitration"). According to Defendants, approximately 84% of the purchases made during the class period were through Sensa's website. Plaintiff Stokes does not contest this high percentage of online purchasers nor the existence of the arbitration agreement, but argues the Court should create subclasses or exclude certain members later. Reply at 11.

One court has held that "[t]he fact that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification," and that "class certification should not be denied merely because some class members may be subject to the defense that their claims are barred by valid documents releasing the defendant from liability." *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 681 (N.D. Cal. 2011) (quoting *Coleman v. GMAC*, 220 F.R.D. 64, 91 (N.D. Tenn. 2004)). The court in *Coleman* decided to proceed "by ruling on the merits of the class certification and reserving the right to create subclasses or exclude members from the class at a later juncture." 220 F.R.D. at 91.

This path, however, has been rejected by another court. In *Pablo v. ServiceMaster Global Holdings Inc.*, No. C 08-3894 SI, 2011 WL 3476473 (N.D. Cal. Aug. 9, 2011), the court declined to resolve the arbitration issue at a later juncture because, "in this case[,] plaintiffs' legal claims are already complex, defendants have presented significant evidence of numerous enforceable arbitration agreements, intervening Supreme Court case

law has complicated the issue of waiver and enforcement, and this case was filed approximately three years ago." *Id.* at *3. The court reasoned that "a significant portion of this litigation would be devoted to discovering which class members signed such agreements and enforcing those agreements, rather than to the resolution of plaintiffs' legal claims—which themselves are complex." *Id.* at *2. The court therefore denied the motion for class certification.

Defendants here also point the Court to choice of law issues relating to the arbitration agreement. The arbitration agreement on Sensa's website states that "any controversy, claim or dispute arising out of . . . products purchased through the Site shall be governed by the laws of your home state of residence." ECF No. 119-1 at 37. In *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007), the Ninth Circuit affirmed the denial of a motion for class certification. *Id.* at 728. The district court below "found the class action waiver to be unconscionable under California law . . . [and] recognized that the waiver may not be unconscionable under other states' laws." *Id.* Therefore, common issues did not predominate because the defendant's "intent to seek arbitration of the class would necessitate a state-by-state review of contract conscionability jurisprudence." *Id.* The Ninth Circuit found the district court did not abuse its discretion in declining to certify the class on this basis. *Id.* Citing *Lozano*, Defendants here argue that challenges to the enforceability of the arbitration provision could be governed by the law of each state of the class member, Opp'n at 25; Plaintiff Stokes does not respond to this specific argument.

If the proposed class is certified, the Court will be forced to determine which of the class members may be subject to the arbitration provision (*i.e.*, those who purchased online), and those who are not (*i.e.*, all others). The Court also may have to analyze the legality of the arbitration clause and whether it binds all, some, or none of the purchasers. *See Lozano*, 504 F.3d at 728. In the end, it is possible that approximately 84% of the class members would not be able to participate in the class action due to their online purchase. The Court therefore agrees with the reasoning by the court in *Pablo*: These individual issues would overshadow the common issues of whether Defendants' advertisements were

false and whether Defendants violated certain laws. Consequently, the Court finds that Plaintiff Stokes has not satisfied the predominance requirement for this reason. The Court proceeds in analyzing Defendants' further arguments so it may point out other issues with the proposed class.

### 2. State Law Variations

Plaintiff proposes certifying a nationwide class and applying California law to the case. Mot. at 18–19. Defendants point to predominance problems with this proposal, arguing in reliance on *Mazza*, 666 F.3d 581, that California law will not apply to the class claims because "the laws of each state govern the claims of the putative class members." Opp'n at 26.

The class action proponent bears the initial burden of showing that California has a sufficient aggregation of contacts to the claims of the putative class. *See Mazza*, 666 F.3d at 589. "Such a showing is necessary to ensure that application of California law is constitutional." *Id.* (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310–13 (1981)). "Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate that foreign law, rather than California law, should apply to class claims." *Id.* (internal quotation marks omitted).

"California law may only be used on a classwide basis if the interests of other states are not found to outweigh California's interest in having its law applied." *Id.* at 589–90. To determine whether the interests of other states outweigh California's interest, courts apply a three-step governmental interest test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.

> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.

> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Id.* (quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87–88 (2010)).

The Ninth Circuit in *Mazza* reviewed the application of California consumer protection laws, specifically the Unfair Competition Law, the False Advertising Law, and the Consumer Legal Remedies Act, to a nationwide class. *Id.* at 587, 590. The court performed California's choice-of-law analysis and determined: (1) there are material differences between California consumer protection laws and the laws of other states, including requirements of scienter, reliance, and available remedies; (2) foreign jurisdictions have a significant interest in regulating interactions between their citizens and corporations doing business within their state, insofar as consumer protection laws affect a state's ability to attract industry; and (3) applying California law to those jurisdictions would significantly impair their "ability to calibrate liability to foster commerce," while "California's interest in applying its law to residents of foreign states is attenuated." *Id.* at 591–94. Based on this analysis, the court held that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place" and vacated the district court's certification of a nationwide class. *Id.* at 594.

Other courts similarly have declined to apply California consumer protection law to a nationwide class. *See, e.g., Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-1831-LHK, 2014 WL 2466559, at *14 (N.D. Cal. May 30, 2014) (declining to certify a nationwide class and narrowing the proposed class to exclusively California consumers); *Astiana*, 291 F.R.D. at 510; *Thurston v. Bear Naked, Inc.*, No. 3:11-cv-2890-H (BGS), 2013 WL 5664985, at *12 (S.D. Cal. July 30, 2013); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 539 (C.D. Cal. 2013).

### a. Conflicts Between States' Laws

Plaintiff brings causes of action for: (1) violation of the Magnuson-Moss Warranty Act; (2) breach of express warranty; (3) breach of implied warranties; (4) violation of California's Consumers Legal Remedies Act; (5) violation of California's False Advertising Law; (6) unlawful business practices in violation of California's Unfair Competition Law (unlawful, unfair, and fraudulent and deceptive practices); (7) violation of Florida's Deceptive and Unfair Trade Practices Act; and (8) negligent misrepresentation. *See generally* TAC.

Defendants identify various "material conflicts" between the laws of California and other states for Plaintiff's causes of action. Opp'n at 26. Defendants state that the consumer protection laws vary as follows: (1) allowing vs. barring class actions, (2) proof of causation and reliance, and (3) proof of actual injury and damages. *Id.* Warranty laws vary as well; for express warranties, for example, the elements of reliance and the notice requirements vary among states. *Id.* at 27. For implied warranties, privity is required between the consumer and the manufacturer in some states. *Id.* The elements of negligent misrepresentation also vary. Defendants have attached a chart showing the relevant differences for all causes of action and remedies. *See* ECF No. 119-2 at 110–33. Plaintiff does not contest that there are differences, but argues they are not material in this case as applied to the facts. Reply at 11.

Defendants have demonstrated that there are differences between California's and other states' laws on material issues for many, if not all, of Plaintiff Stokes' causes of action. Issues such as privity, the statute of limitations, the notice requirement, etc., are material in this case because each could be dispositive of the individual class members' cases.[5]

---

[5] Plaintiff Stokes contests Defendants' argument regarding reliance, arguing that of course the consumers relied on the advertising, or else they would have been purchasing a random box of sprinkles. Mot. at 9. While this may be true and it is likely that the consumers relied on the weight loss advertisements, Plaintiff Stokes does not present any argument as to why other elements are not material to this case, such as privity, statute of limitations, etc.

b. States' Interests

Defendants argue each state has an interest in applying its own law for issues involving conduct that impacts its residents. Opp'n at 27. Indeed, the court in *Mazza* held that "each state has an interest in setting the appropriate level of liability for companies conducting business within its territory." 666 F.3d at 592. Plaintiff Stokes does not appear to contest this, arguing only why California would be more impaired if its own law were not applied. The Court finds that all states have an interest in applying their own laws to protect their residents.

c. Which Law Applies?

This issue now becomes which state's interest would be more impaired should their law not apply. Plaintiff Stokes argues that Sensa was headquartered in California, so most class members purchased the Class Products online from a California-based company. Reply at 13. Plaintiff Stokes notes that Defendants had no physical locations in other states, and "did not pay taxes to foreign states for the online sales of Sensa." *Id.* In sum, Plaintiff Stokes claims that the foreign states, "to whom sales of Sensa provided virtually no tax revenue or jobs, face minimal impairment from the application of California to Defendants." *Id.*

The Court disagrees with Plaintiff Stokes' reasoning. Simply because Defendants are not located in and do not pay taxes in foreign states does not mean that those states do not have an interest in protecting their own residents. The Court must look at the interests of all states.

It is true that Sensa was located in California, and California has an interest in ensuring false advertising and unfair business practices do not emanate from companies within its borders. *See Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 WL 8742757, at *20 (N.D. Cal. Dec. 21, 2010) (noting that California courts have "recognized California's interest in entertaining claims by nonresident plaintiffs against resident defendants"). California "has a legitimate interest in extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California." *Norwest Mortg.,*

*Inc. v. Super. Ct.*, 72 Cal. App. 4th 214 (1999). Nonetheless, "every state has an interest in having its law applied to its resident claimants." *Mazza*, 666 F.3d at 592–93 (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir.), *amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001)). Further, both California courts and the Ninth Circuit have held that "the place of the wrong" has the predominant interest in regulating the conduct at issue. *Hernandez v. Burger*, 102 Cal. App. 3d 795, 801–02 (1980), *Abogados v. AT & T, Inc.*, 223 F.3d 932, 935 (9th Cir. 2000). The Restatement (First) of Conflict of Laws defines the "place of wrong" as "the state where the last event necessary to make an actor liable for an alleged tort takes place." *See Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 80 n.6 (1957) (citing Restatement (First) of Conflict of Laws § 377 (1934)). Note 4 to the Restatement further elaborates that "[w]hen a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made." Thus, the "place of the wrong" occurs where the potential class members sustains their loss. *See Guzman*, 305 F.R.D. at 617 (finding same). Here, this would be where the members saw the advertisements and subsequently purchased the product, regardless of where the company selling the product was located at the time. Thus, as the place of the wrong, these states would have a greater interest than does California in applying their law to this case.

The Court therefore concludes that, under California's choice-of-law analysis, the claims of the potential classmembers should be governed by the laws of the jurisdiction in which the loss was sustained. For purchases made outside California, the Court finds that other states' interests would be more impaired by applying California law than would California's interests by applying the laws of other states. Applying California law for the nationwide class is therefore inappropriate. Because adjudication of the nationwide claims could require application of the laws of 50 states, common questions of law would not predominate for the proposed nationwide class, as is required by Rule 23(b)(3). In sum, the Court finds that Plaintiff has not satisfied the predominance requirement.

/ / /

## B. Superiority

The final requirement for class certification is "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). "In determining superiority, courts must consider the four factors of Rule 23(b)(3)." *Zinser*, 253 F.3d at 1190. The Rule 23(b)(3) factors are:

> (A) [T]he class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The superiority inquiry focuses "on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (internal quotation marks omitted). A district court has "broad discretion" in determining whether class treatment is superior. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

Defendants argue that a class action is not superior to other methods here because of the prior FTC settlement. Opp'n at 21. Defendants primarily rely on *Kamm v. California City Development* in support of this argument. In *Kamm*, the plaintiffs brought a putative class action for claims arising out of the defendants' land promotion scheme. 509 F.2d at 206. Prior to the initiation of the plaintiffs' suit, the Attorney General and the Real Estate Commissioner of California had brought an action against four of the nine defendants, in which a permanent injunction and final judgment on a settlement agreement had already been filed. *Id.* at 207–08. The settlement agreement provided for offers of restitution of principal payment to certain purchasers, as well as an agreement that the defendant would use its "best efforts to establish and implement a program to settle future disputes," including rendering quarterly reports to the Attorney General setting forth the names of complainants, the general nature of the complaints, and the disposition. *Id.* at 208. The

defendants were also permanently enjoined from engaging in the fraudulent conduct at issue. *Id.* The state court retained jurisdiction over the matter, and nothing precluded any purchaser from instituting an individual action against the defendants for any alleged damage. *Id.*

Under those circumstances, the Ninth Circuit upheld the district court's dismissal of the plaintiffs' class complaints for lack of superiority, citing seven factors supporting the holding. *Id.* at 212. First, "[a] class action would require a substantial expenditure of judicial time which would largely duplicate and possibly to some extent negate the work" in the prior action. Second, the class action would involve thousands of buyers "in separate transactions over a 14 year period." Third, "[s]ignificant relief had been realized in the state action through:" (a) restitution, (b) defendant's "agreement to establish a program to settle future disputes," (c) a permanent injunction, and (d) a "guarantee of funds for off-site improvements." Fourth, the state court retained continuing jurisdiction. Fifth, no member of the class was barred from initiating a suit on his or her own behalf. Sixth, "[a]lthough the class action aspects of the case ha[d] been dismissed, appellants' action [was] still viable." And seventh, "[d]efending a class action would prove costly to the defendants and duplicate in part the work expended over a considerable period of time in the state action." *Id.*

Applying *Kamm* to a situation similar to that of the present case, the court in *Imber-Gluck v. Google Inc.*, No. 5:14-cv-1070-RMW, 2015 WL 1522076 (N.D. Cal. Apr. 3, 2015), analyzed the superiority requirement for a proposed class when an FTC settlement was already in place. After applying the *Kamm* factors, the court in *Imber-Gluck* found the class action was not superior because the relief plaintiffs sought, *i.e.*, refunds for their purchases from Google, was already available through the FTC settlement. *Id.* at *2.

Plaintiff Stokes argues the Court should not consider the FTC settlement superior to the class action for two reasons. First, she distinguishes *Kamm* by stating that she estimates that classwide damages are more than $170 million, so "tens of thousands of class members" are still owed money despite the $26.5 million obtained by the FTC. Reply at

27

10.[6]  This argument, however, was specifically rejected by the Ninth Circuit in *Kamm*, in which the settlement totaled $3.3 million for losses of up to $200 million.  509 F.2d at 207–08.  The court noted "[i]t is true that not all members of the class appellants seek to represent will be protected by the California settlement; nor will the class recover an amount that is even close to that sought in the class action."  *Id.* at 211.  The settlement did not cover all putative class members, and required the defendant to "use its best efforts to establish and implement a program to settle future disputes."  *Id.* at 208.  Similarly, here, although the FTC settlement did not provide as much money as Plaintiff and the class members seek, this disparity does not prevent the Court from considering the FTC settlement in analyzing superiority.

Plaintiff also argues that the FTC settlement did not involve the solvent Defendants in this action, IBH or JustFab, so there is no duplication as to those Defendants.  Reply at 10.  Again, the court in *Kamm* rejected a similar argument, noting that "the state action did not involve the same controversy, [and] did not include five of the defendants named in this action."  509 F.2d at 213.  Although there were differences between the two actions, both "involve[d] the same fraudulent conduct of the defendants and both seek to provide relief for those injured thereby."  *Id.*  In sum, the court concluded that the differences did not "render the state action so different a controversy that it should not have been considered by the district court in determining whether the class action was superior to alternative methods."  *Id.*  Therefore, despite the different parties, the Court may still consider the FTC settlement in analyzing superiority.  The Court now analyzes the *Kamm* factors in the context of this case:

First, the class action would "require a substantial expenditure of judicial time which would largely duplicate" the work of the FTC investigation and resulting settlement.  *See*

---

[6] Plaintiff Stokes argues that the FTC settlement was paid to people who purchased Sensa at any time from 2008 to 2014, and therefore many class members are not covered.  Reply at 10 n.1.  Plaintiff Stokes' proposed class covers those who purchased Sensa on or after August 22, 2012.  Therefore, the FTC settlement and proposed class are therefore at least duplicative for the overlapping time.

*Kamm*, 509 F.2d at 212.  Second, the class would involve thousands of purchasers of the Class Products over a period of approximately six years.  Third, the FTC settlement has provided "significant relief" to some class members to the tune of $26.5 million.  The difference between this case and *Kamm*, however, is that here there is no "agreement [by the defendants] to settle future disputes."  Fourth, the district court in the FTC matter retained jurisdiction "for purposes of construction, modification, and enforcement of this Order."  *See* Ex. I to TAC, ECF No. 76-2 at 41.  Fifth, the FTC settlement does not state whether it bars class action claims; however, it appears that it does not, as the Court assumes that Defendants would have raised this argument.  Sixth, Plaintiff Stokes' claims (as well as other individual claims) are still viable.  Seventh, as the Court assumes to be true generally, defending a class action "would prove costly to the defendants."  *See Kamm*, 509 F.2d at 212.

In sum, the *Kamm* factors weigh almost exclusively in favor of finding that the superiority requirement has not been met here.  Although it is true that the main distinction between the facts in this case and those in *Kamm*, *i.e.*, that there is no agreement here to settle future disputes, weighs in favor of Plaintiff Stokes, the Court finds that because Plaintiff Stokes and other members may still bring individual suits, this is an adequate way to resolve future disputes.  This leads the Court to conclude that Plaintiff Stokes has failed to establish that the proposed class action is superior to other methods for adjudication of the controversy.

## IV.  Ascertainable Class

Although usually analyzed before the Rule 23 factors, the Court now analyzes whether the class is ascertainable so it may point out one final flaw in Plaintiff Stokes' proposed class.  "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists."  *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).  Certification is improper if there is "no definable class."  *Lozano*, 504 F.3d at 730.  "A class should be precise, objective, and presently ascertainable," though "the class need not

be so ascertainable that every potential member can be identified at the commencement of the action." *O'Connor v. Boeing N. Am. Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotation marks omitted). "A class is ascertainable if it is defined by 'objective criteria' and if it is 'administratively feasible' to determine whether a particular individual is a member of the class." *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 2860995, at *4 (N.D. Cal. June 23, 2014). On the other hand, "[a] class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." *Hanni v. Am. Airlines, Inc.*, No. C 08-00732, 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010). "It is not fatal for a class definition to require some inquiry into individual records, as long as the inquiry is not so daunting as to make the class definition insufficient." *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 673 (N.D. Cal. 2011) (internal quotation marks omitted).

Defendants did not address the ascertainability of the proposed class; however, the problems recognized by the Court above also pose problems for this requirement, and the Court briefly repeats them here. First, the Court finds that Plaintiff Stokes has failed to establish an ascertainable class because 84% of the class purchased the Class Product from the website and therefore may be subject to arbitration. This statistic has been presented by Defendants and not refuted by Plaintiff Stokes, nor has she argued that the arbitration provision on the website is invalid or inapplicable. *See Guzman v Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 612 (S.D. Cal. Mar. 26, 2015) (determining that "Plaintiff fails to demonstrate an identifiable and ascertainable class in light of evidence suggesting that up to 96% of the proposed class may not even be eligible to participate in this class action" due to an arbitration agreement).

Second, the Court finds that Plaintiff Stokes has failed to establish an ascertainable class because the proposed class does not exclude purchasers who have already received funds from the FTC settlement. In *Algarin*, the court found that the class was "overbroad and not ascertainable" because the class "does not exclude purchasers who have already received refunds through [defendant's] Refund program. 300 F.R.D. at 455. The court

noted that, "[a]s the [Unfair Competition Law] only permits recovery or restitution/disgorgement, for purchasers who have already received refunds, they have already been compensated well over any potential disgorgement. These purchasers have no claims." *Id.*; *see a;sp Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1151 (N.D. Cal. 2010) (finding a class not ascertainable where the definition includes persons who have received refunds, replacements, or who have not suffered any damages at all).

In sum, Plaintiff Stokes has failed to demonstrate her proposed class is ascertainable.

## CONCLUSION

The Court finds Plaintiff Stokes has not met her burden in establishing that: (1) the class is ascertainable, (2) common issues predominate over individual issues, and (3) the class action is superior to other methods. The Court therefore **DENIES** Plaintiff Stokes' Motion for Class Certification (ECF No. 115).

The Court is within its discretion to give Plaintiff Stokes a second opportunity to show that the proposed class fulfills all requirements of Federal Rule of Civil Procedure 23. *See, e.g.*, *Newberry v. Cnty. of San Bernardino*, No. EDCV 14-2298 JGB (SPx), 2015 WL 9701153, at *7 (C.D. Cal. July 23, 2015); *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774, 2010 WL 3034060, at *1 (C.D. Cal. July 30, 2010), *aff'd*, 548 Fed. App'x 461 (9th Cir. 2013) (denying without prejudice motion for class certification where plaintiffs failed to show ascertainability and further evidence may cure deficiency). The Court finds that Plaintiff Stokes may be able to cure the deficiencies noted herein. Any further motion for class certification shall address the issues detailed above.

The Court **ORDERS** the parties to meet and confer and, by October 15, 2018, jointly propose a briefing schedule for Plaintiff Stokes' renewed motion for class certification.

**IT IS SO ORDERED.**

Dated: September 10, 2018

*Janis L. Sammartino*

Hon. Janis L. Sammartino
United States District Judge

14-cv-51 JLS WVG