UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CONDE, et al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>SENSA, et al.,<br><br>                              Defendants. | Case No.:  14-CV-51 JLS (WVG)<br><br>**ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>(ECF No. 134) |

Presently before the Court is Plaintiff Susan Grace Stokes' Renewed Motion for Class Certification ("Renewed Mot.," ECF No. 134).  Also before the Court is Defendants IB Holding, LLC ("IBH") and TechStyle, Inc.'s ("TSI") Opposition to ("Opp'n," ECF No. 139) and Plaintiff's Reply in Support of ("Reply," ECF No. 140) the Motion.  The Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  *See* ECF No. 142.  Having carefully considered the Parties' arguments, the relevant evidence, and the law, the Court **DENIES** Plaintiff's Renewed Motion.

## BACKGROUND

On January 7, 2014, several complaints were filed against Sensa Products, LLC ("Sensa") regarding its marketing of a line of weigh loss products that consumers were instructed would result in weight loss if sprinkled on their food.

/ / /

First, the Federal Trade Commission ("FTC") filed a complaint against Sensa Products, LLC ("Sensa"); Adam Goldenberg; and Dr. Hirsch (collectively, the "FTC Defendants") alleging unfair or deceptive practices and false advertisements. Third Consolidated Amended Class Action Complaint ("TAC," ECF No. 76) ¶¶ 13, 107. The FTC and the FTC Defendants entered into a stipulated judgment for $46.5 million, *id.* ¶¶ 13, 109; *see also id.* Ex. I, later reduced to $26.5 million because of Sensa's "deteriorating financial condition." Opp'n at 3 (citing Def.'s First Request for Judicial Notice ("1st RJN," ECF No. 119-3) Ex. 8 at 13). As part of the settlement, the FTC Defendants also were restrained from, among other things, falsely representing that any product causes weight loss. TAC Ex. I at 8. Following extensive publicization of the FTC settlement on national television; in national print publications; and on international, national, and local news websites, *see* Decl. of Jeffrey L. Richardson in Support of Opp'n ("2nd Richardson Decl.," ECF No. 139-2) ¶ 5, the FTC mailed over 477,000 refund checks totaling over $26,000,000 to consumers who had bought Sensa's products. 1st RJN Ex. 10.

Second, on the same date that the FTC filed its complaint, José Conde filed the instant putative class action, *Conde v. Sensa*, No. 14-CV-51 JLS (WVG) (S.D. Cal. filed Jan. 7, 2014), against Sensa, alleging causes of action for violation of California's False Advertising Law ("FAL"), California Business and Professions Code §§ 17500 *et seq.*; violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 *et seq.*; and violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.* ECF No. 1. Two related cases were filed subsequently: *Delaney et al. v. Sensa*, No. 14-CV-2120 JLS (WVG) (S.D. Cal. filed Sept. 8, 2014); and *Stokes v. Sensa*, No. 14-CV-2325 JLS (WVG) (S.D. Cal. filed Oct. 1, 2014).

On October 17, 2014, Sensa filed for bankruptcy. TAC ¶ 110. Nonetheless, on November 3, 2014, the *Delaney* Plaintiffs moved the Court for an order consolidating the

/ / /

/ / /

three cases.  *See* ECF No. 17.[1]  The Court granted the motion on April 13, 2015, and consolidated the cases.  *See* ECF No. 32.

After consolidation, on May 13, 2015, Plaintiffs filed an amended complaint against Sensa; Dr. Alan Hirsh; and General Nutrition Corp. and General Nutrition Centers, Inc. (together, "GNC"), alleging causes of action for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*; breach of express warranty; breach of implied warranties; violation of the CLRA; violation of the FAL; violation of the unlawful, unfair, and fraudulent/deceptive prongs of the UCL; violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes §§ 501.201 *et seq.*; violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pennsylvania Statutes §§ 201-1 *et seq.*; and negligent misrepresentation.  *See* ECF No. 33.  On September 11, 2015, the *Delaney* Plaintiffs and GNC settled, and Ms. Delaney dismissed without prejudice the class claims against GNC.  *See* ECF Nos. 53, 54.

Following the settlement and dismissal of GNC, only Ms. Stokes moved on November 16, 2015, to file an amended complaint.  *See* ECF No. 56.  The Court granted the request on December 28, 2015, *see* ECF No. 59, and, on January 14, 2016, Ms. Stokes filed an amended complaint against Sensa and various other companies and individuals, dropping the cause of action under Pennsylvania law and adding a cause of action for alter ego/veil piercing to hold other Defendants liable for the conduct of Sensa.  *See* ECF No. 60.  On November 1, 2016, Ms. Stokes filed the operative Third Consolidated Amended Class Action Complaint ("TAC") against Sensa Products, LLC; Sensa, Inc. (f/k/a Intelligent Beauty, Inc.); IB Holding, LLC (a/k/a Intelligent Beauty Holding, LLC); TechStyle, Inc. (f/k/a JustFab, Inc. and Just Fabulous, Inc.); Dr. Alan R. Hirsh; Don Ressler; Adam Goldenberg; Kristen Chadwick; TCV VI, L.P; TCV Technology Crossover Ventures; and John Drew.  *See generally* ECF No. 76.

/ / /

---

[1] Unless otherwise indicated, ECF numbers relate to filings in the lead case, Number 14-CV-51.

Generally, Ms. Stokes alleges that Sensa produced various weight-loss products, which were "tastant crystals" or "sprinkles" that users would sprinkle on their food. TAC ¶ 2. As marketed by Sensa, when the users smelled and tasted the crystals, the crystals would trigger the user's "I feel full" signal and the user would therefore eat less food. *Id.* ¶ 3. Originally, Sensa marketed that the products would allow users to "lose up to 30lbs or more in just 6 months" without requiring the user to diet or exercise. TAC ¶¶ 4–5. In connection with the FTC action, in late 2013 or early 2014, "Sensa Products changed the 'lose up to 30lbs or more in just 6 months' statement to '9.5 pounds in 6 months' and/or '10 pounds in 3+ months.'" Decl. of Kristin Chadwick ("Chadwick Decl.," ECF No. 119-1) ¶ 6. Specifically, the three products at issue are Sensa Weight-Loss System, Sensa for Men Weight-Loss System, and Sensa Advanced Weight-Loss System (the "Class Products"). *See* Renewed Mot. at 1 n.1. Plaintiff states she relied on the labeling for the Class Products and alleges the Products are ineffective, the Products have not been "clinically shown" to cause weight loss, and the system is not "supported by impressive clinical results." TAC ¶¶ 7–8. Ms. Stokes further alleges Sensa, IBH, and TSI operated as a single enterprise. *Id.* ¶¶ 134–35. Ms. Stokes therefore seeks to recover against IBH and TSI, who remain solvent. *Id.* ¶ 136.

On February 9, 2018, Ms. Stokes sought certification of a nationwide class defined as "[a]ll persons in the United States who purchased Defendants' Sensa Weight-Loss System, on or after August 22, 2012." *See* ECF No. 115. Following a hearing on September 4, 2018, *see* ECF No. 127, the Court denied without prejudice Ms. Stokes' motion, *see generally* ECF No. 128, finding that Ms. Stokes had "not met her burden in establishing that: (1) the class is ascertainable, (2) common issues predominate over individual issues, and (3) the class action is superior to other methods." *See id.* at 31. Because the Court concluded that the identified deficiencies might be curable, it granted Ms. Stokes leave to file a renewed motion.

Ms. Stokes filed the instant motion on February 21, 2019. *See generally* ECF No. 134. She now seeks to certify a nationwide class defined as "[a]ll persons in the United

States who purchased the Sensa Weight-Loss System on or after August 22, 2012 excluding purchases made directly from Sensa, Inc. and Sensa Products, LLC." Not. of Renewed Mot. at 1 (footnote omitted).  Alternatively, Ms. Stokes seeks to certify a Florida class comprised of "[a]ll persons who purchased the Sensa Weight-Loss System in Florida on or after August 22, 2012 excluding purchases made directly from Sensa, Inc. and Sensa Products, LLC." *Id.*

## LEGAL STANDARD

Motions for class certification proceed under Rule 23(a) of the Federal Rules of Civil Procedure. Rule 23(a) provides four prerequisites to a class action: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"), and (4) the representative parties will fairly and adequately protect the interests of the class ("adequate representation").  Fed. R. Civ. P. 23(a).

A proposed class must also satisfy one of the subdivisions of Rule 23(b). Here, Plaintiff seeks to proceed under Rule 23(b)(3), which requires that "the court find[] that the [common questions] predominate over any questions affecting only individual members ['predominance'], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ['superiority']."  The relevant factors in this inquiry include the class members' interest in individually controlling the litigation, other litigation already commenced, the desirability (or not) of consolidating the litigation in this forum, and manageability.  Fed. R. Civ. P. 23(b)(3)(A)–(D).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (internal quotations omitted).  "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—

that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* The court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992). A weighing of competing evidence, however, is inappropriate at this stage of the litigation. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

## ANALYSIS

### I. Standing

In their opposition to Plaintiff's initial motion for class certification, Defendants contested Ms. Stokes standing in various regards: (1) Ms. Stokes is a Florida resident who neither purchased any Class Products in California during the class period nor visited or purchased Class Products from the Sensa websites; (2) Ms. Stokes did not suffer an injury because she was happy with the products and accomplished her goal of maintaining her weight; and (3) Ms. Stokes never purchased two of the Class Products, Sensa for Men and Sensa Advanced. ECF No. 119 at 7–10. The Court rejected Defendants' arguments and concluded that Ms. Stokes has standing to bring this action. *See* ECF No. 128 at 5–10.

Defendants have incorporated their previously rejected arguments into their Opposition to Ms. Stokes' Renewed Motion. *See* Opp'n at 7 n.3. The Court again rejects Defendants' arguments for the same reasons as in its September 10, 2018 Order.

### II. Rule 23(a) Requirements

Ms. Stokes must establish that the proposed class satisfies the four requirements of Rule 23(a). In their opposition to Ms. Stokes' initial motion for class certification, Defendants challenged Ms. Stokes' typicality on the grounds that she: (1) purchased the Class Products to maintain—rather than to lose—weight, (2) experienced side effects from use of the Class Products, (3) expressed satisfaction with the Class Products, (4) used only

/ / /

/ / /

/ / /

one of the three Class Products, and (5) did not see and rely on all representations by Sensa.[2]  *See* ECF No. 119 at 10–13.  Defendants also argued that Ms. Stokes could not adequately fulfill her duties as class representative because of her health issues and unfamiliarity with this action.  *See id.* at 13.  The Court rejected each of these arguments and determined that Ms. Stokes had met her burden as to each of the Rule 23(a) requirements.  *See* ECF No. 128 at 10–18.

Again, Defendants have incorporated their previously rejected arguments into their Opposition to Ms. Stokes' Renewed Motion.  *See* Opp'n at 7 n.3.  The Court again rejects Defendants' arguments for the same reasons as in its September 10, 2018 Order and concludes that Ms. Stokes has satisfied the requirements of Rule 23(a).

## III.    Rule 23(b)(3) Requirements

Rule 23(b)(3) states that a class may be maintained if the requirements of Rule 23(a) are fulfilled and if "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The Court previously determined that Ms. Stokes had failed to satisfy either of these requirements because individual issues concerning the arbitration provision applicable to purchases of the Class Product through Sensa's website and application of non-California law would overshadow common issues and because a class action might not be superior given the prior FTC settlement.  *See* ECF No. 128 at 18–29.  Ms. Stokes' attempts to remedy these deficiencies by narrowing the proposed class to exclude those who purchased the Class Products directly from Sensa.  *See* Renewed Mot. at 1–3.

/ / /

---

[2] Defendants also originally argued that Ms. Stokes was not typical because she purchased the Class Products only through third-party retailers and never saw Sensa's website.  *See* ECF No. 119 at 12–13. This argument appears to have no relevance here, where Ms. Stokes seeks to certify a class excluding those who made their purchases of the Class Products directly from Sensa.

### A.    *Predominance of Common Issues*

As the Court noted in its prior Order, *see* ECF No. 128 at 18–19, the predominance analysis focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" to determine "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also* Fed. R. Civ. P. 23(b)(3) (to certify a class, the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members"). "Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (quotation marks omitted). A court must analyze these elements to "determine which are subject to common proof and which are subject to individualized proof." *In re TFT-LCD I*, 267 F.R.D. at 310–11.

As before, *see* ECF No. 119 at 16–25, Defendants argue that individual legal and factual issues will predominate and, consequently, this requirement is not satisfied. *See* Opp'n at 10–24. Specifically, Defendants contend that there exist individual issues of fact and law regarding arbitration that bar class certification; that material conflicts in the laws of each state bar certification of a nationwide class; and that individual factual issues related to reliance, materiality/causation, inefficacy, and damages will predominate. *See generally id.*

### 1.    *Arbitration*

The Court previously concluded that Ms. Stokes had failed to satisfy the predominance requirement because the existence of an arbitration clause on Sensa's website would lead individual issues concerning arbitrability to overshadow the common issues of whether Defendants' advertisements were false. *See* ECF No. 128 at 19–21. Ms. Stokes has attempted to remedy this deficiency by explicitly "exclud[ing] purchases directly from the Sense companies [that] would . . . have been subject to arbitration." Renewed Mot. at 1.

Defendants now contend that those who purchased the Class Products from third-party retailers may also be subject to arbitration if they used credit cards subject to arbitration clauses with their card-issuing banks to make their purchase(s). *See* Opp'n at 10–13 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). Ms. Stokes counters that this argument is "absurd" and "utterly ridiculous." *See* Reply at 2.

The Court must agree with Ms. Stokes. Both Delaware and Minnesota law recognize that "[g]enerally, arbitration clauses . . . cannot be enforced by persons who are not parties to the contract."[3] *Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 356 (Minn. 2003); *accord Kuroda v. SPJS Holdings, LLC*, No. CIV.A. 4030-CC, 2010 WL 4880659, at *3 (Del. Ch. Nov. 30, 2010) (citing *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 434 (Del. Ch. 2007)). There are, of course, exceptions, including equitable estoppel, agency, and third-party beneficiary, *see id.*, none of which apply here.

### 2. State Law Variations

The Court previously "conclude[d] that, under California's choice-of-law analysis, the claims of the potential classmembers should be governed by the laws of the jurisdiction in which the loss was sustained," meaning "common questions of law would not predominate for the proposed nationwide class, as is required by Rule 23(b)(3)." ECF No. 128 at 25. Ms. Stokes urges the Court to reconsider its prior decision, contending that "certification of the nationwide class under California law is appropriate because Defendants are not only headquartered in California, but the misconduct complained of originated in – and emanated from – California." Renewed Mot. at 13. Defendants counter that "[t]here is no basis to disturb this Court's [prior] analysis and findings." Opp'n at 13.

///

---

[3] Neither Ms. Stokes nor Defendants address the applicable law, but the Supreme Court has indicated that state contract law should be applied in determining whether a non-signatory to a contract may enforce its arbitration provision. *Arthur Andersen LLP*, 556 U.S. at 631. Here, Ms. Stokes' card user agreements were governed by Delaware and Minnesota law. *See* Request for Judicial Notice in Support of Defendants' Opposition to Renewed Motion ("2nd RJN," ECF No. 139-1) Ex. D at 46; 2nd RJN Ex. E at 52.

As the Court previously explained, *see* ECF No. 128 at 21–22, the class action proponent bears the initial burden of showing that California has a sufficient aggregation of contacts to the claims of the putative class. *See Mazza v. Am. Honda Moro Co.*, 666 F.3d 581, 589 (9th Cir. 2012). "Such a showing is necessary to ensure that application of California law is constitutional." *Id.* (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310–13 (1981)). "Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate that foreign law, rather than California law, should apply to class claims." *Id.* (internal quotation marks omitted).

"California law may only be used on a classwide basis if the interests of other states are not found to outweigh California's interest in having its law applied." *Id.* at 589–90. To determine whether the interests of other states outweigh California's interest, courts apply a three-step governmental interest test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Id.* (quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87–88 (2010)).

The Ninth Circuit in *Mazza* reviewed the application of California consumer protection laws, specifically the Unfair Competition Law, the False Advertising Law, and the Consumer Legal Remedies Act, to a nationwide class. *Id.* at 587, 590. The court performed California's choice-of-law analysis and determined: (1) there are material

differences between California consumer protection laws and the laws of other states, including requirements of scienter, reliance, and available remedies; (2) foreign jurisdictions have a significant interest in regulating interactions between their citizens and corporations doing business within their state, insofar as consumer protection laws affect a state's ability to attract industry; and (3) applying California law to those jurisdictions would significantly impair their "ability to calibrate liability to foster commerce," while "California's interest in applying its law to residents of foreign states is attenuated." *Id.* at 591–94. Based on this analysis, the court held that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place" and vacated the district court's certification of a nationwide class. *Id.* at 594.

Other courts similarly have declined to apply California consumer protection law to a nationwide class. *See, e.g., Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-1831-LHK, 2014 WL 2466559, at *14 (N.D. Cal. May 30, 2014) (declining to certify a nationwide class and narrowing the proposed class to exclusively California consumers); *Astiana*, 291 F.R.D. at 510; *Thurston v. Bear Naked, Inc.*, No. 3:11-cv-2890-H (BGS), 2013 WL 5664985, at *12 (S.D. Cal. July 30, 2013); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 539 (C.D. Cal. 2013).

a.   Conflicts Between States' Laws

The Court previously concluded that "Defendants ha[d] demonstrated that there are differences between California's and other states' laws on material issues for many, if not all, of Plaintiff Stokes' causes of action," and that "[i]ssues such as privity, the statute of limitations, the notice requirement, etc., are material in this case because each could be dispositive of the individual class members' cases." ECF No. 128 at 23. Ms. Stokes does not dispute the Court's finding in her Renewed Motion, *see generally* Renewed Mot.; *see also* Opp'n at 13; the Court therefore sees no reason to alter its prior conclusion.

/ / /

/ / /

### b. States' Interests

Relying on the Ninth Circuit's holding in *Mazza* that "each state has an interest in setting the appropriate level of liability for companies conducting business within its territory," the Court previously found "that all states have an interest in applying their own laws to protect their residents." ECF No. 128 at 24 (quoting *Mazza*, 666 F.3d at 592). Ms. Stokes argues that "[t]here is no true conflict of interest between California and the other forty-nine states," Renewed Mot. at 15, because "no foreign state has a legitimate interest in shielding Defendants from liability," *id.* at 16, and "[f]oreign states . . . 'have no identifiable interest in denying [consumers] full recovery [afforded under California law],'" *id.*, as would happen here, where "there is no action of process available to the defrauded purchasers of Sensa other than this class action." *Id.* at 17.

Defendants counter that Ms. Stokes does not dispute that each state has an interest in applying its law to its own residents, which "alone is sufficient to reject Stokes' argument." Opp'n at 14. Further, each state has an interest in setting the appropriate level of liability for companies conducting business within its territory, which is implicated with particular force where Ms. Stokes has limited her proposed class to those purchasing the Class Products from third-party retailers because "Sensa and the Sensa companies . . . generate or contributed to the generation of jobs, revenue, and taxes in each respective state where Sensa was sold." *Id.* Finally, Defendants contend that each state has an interest in protecting its residents by setting the appropriate level of liability for companies, whether lesser or grater than that offered by California. *Id.* at 15.

Ultimately, as in *Mazza*, "[t]he . . . sales at issue in this case took place within . . . different jurisdictions, and each state has a strong interest in applying its own consumer protection laws to those transactions." *See* 666 F.3d at 592. Ms. Stokes' argument on reply that foreign states have no interest in limiting their consumers' recovery to protect businesses operating in other states, *see* Reply at 6–7, is unavailing. In *Mazza*, the defendant was a California corporation. *See* 666 F.3d at 594. Nonetheless, the Ninth Circuit recognized that "each state[ has a] valid interest in shielding out-of-state businesses

from what the state may consider to be excessive litigation." *Id.* at 592. Indeed, in support of this proposition, the Ninth Circuit relied on a then-recent ruling from the California Supreme Court, *see id.*, in which California's highest court held that Oklahoma had a "real and legitimate interest" in seeing "a rule of law limiting liability for commercial activity conducted within the state" applied against a non-Oklahoma company. *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 91–94 (2010); *see also id.* at 91 ("When a state adopts a rule of law limiting liability for commercial activity conducted within the state in order to provide what the state perceives is fair treatment to, and an appropriate incentive for, business enterprises, we believe that the state ordinarily has an interest in having that policy of limited liability applied to out-of-state companies that conduct business in the state, as well as to businesses incorporated or headquartered within the state."). To the extent Ms. Stokes contends that *Hurtado v. Superior Court*, 11 Cal. 3d 574, 586 (1974), compels a different result, the Court disagrees.

For these and the reasons articulated in the Court's September 10, 2018 Order, *see* ECF No. 128 at 24, the Court again concludes that all states have an interest in applying their own laws here.

### c. Which Law Applies?

Finally, the Court previously concluded that the "place of the wrong" was the state in which consumers saw the advertisements and subsequently purchased the product and that "the claims of the potential classmembers should be governed by the laws of the jurisdiction in which the loss was sustained." ECF No. 128 at 25. Accordingly, "[f]or purchases made outside California, . . . other states' interests would be more impaired by applying California law than would California's interests by applying the laws of other states." *Id.*

Ms. Stokes claims that "[t]he Court's prior reliance on the place of the wrong as the deciding factor in determining the predominant interest in regulating the conduct at issue is misplaced," Renewed Mot. at 21 (citing *Hernandez v. Burger*, 102 Cal. App. 3d 795,

/ / /

801–02 (1980)) (internal quotation marks omitted),[4] because "California abandoned that legal theory long ago." *Id.* (citing *Reich v. Purcell*, 67 Cal. 2d 551, 555 (1967)). Defendants contend that Ms. "Stokes is mistaken" and that the place of the wrong is a relevant consideration where, as here, Ms. "Stokes, as well as many other putative class members, do reside in the foreign 'state[s] of the place of the wrong.'" Opp'n at 17–18 (citing *Reich*, 67 Cal. 2d at 556). On reply, Ms. Stokes again reiterates "Defendants' tortious conduct occurred exclusively in California" because "[a]ll of Defendants' principal places of business were in California, and the final decisions regarding the representations made on the Sensa labels and advertisements were made in California, regardless of where a class member purchased Sensa." Reply at 8.

The Court is not persuaded to change its prior analysis by Ms. Stokes' arguments. The Ninth Circuit in *Mazza* recognized that "the last events necessary for liability as to the foreign class members—communication of the advertisements to the claimants and their reliance thereon in purchasing [the products]—took place in the various foreign states, not in California." 666 F.3d at 594. So too here—and *Mazza* is controlling.

The Court therefore concludes—as it did before, *see* ECF No. 128 at 25—that, under California's choice-of-law analysis, the claims of the potential classmembers should be governed by the laws of the jurisdiction in which the loss was sustained. Consequently, for purchases made outside California, other states' interests would be more impaired by applying California law than would California's interests by applying the laws of other states. Applying California law for the nationwide class would therefore be inappropriate. Because adjudication of the nationwide claims could require application of the laws of fifty states, common questions of law would not predominate for the proposed nationwide class, as is required by Rule 23(b)(3). Accordingly, the Court again finds that Ms. Stokes has not satisfied the predominance requirement.

---

[4] Ms. Stokes indicates that she is quoting from the Court's September 10, 2018 Order, *see* Renewed Mot. at 21, but, as Defendants note, "the purportedly quoted language does not appear anywhere in the Order." *See* Opp'n at 18 n.13.

### 3. Individual Factual Issues

Finally, Defendants contend that individual factual issues pertaining to reliance, materiality/causation, inefficacy, and damages will predominate. *See* Opp'n at 21–24. Although Defendants raised these arguments previously, *see* ECF No. 119 at 21–25, the Court did not address them, *see generally* ECF No. 128, except to note that "it is likely that the consumers relied on the weight loss advertisements." *Id.* at 23 n.5.

Despite the Court's prior comment about consumers' likely reliance, "the Ninth Circuit has stated that presumption of reliance typically is only permitted in securities fraud cases, and only in cases based on omissions as opposed to affirmative misrepresentations." *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 623 (S.D. Cal. 2007) (citing *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664–68 (9th Cir. 2004)). Further, although Ms. Stokes contends that "Defendants' slight variations in their advertisements are irrelevant to this action," Reply at 9, different alleged misrepresentations were made to different groups of consumers during the proposed class period. Although Ms. Stokes' proposed class spans from August 22, 2012, Sensa advertised "lose up to 30lbs or more in just 6 months" until late 2013 or early 2014, at which time Sensa changed its advertisements to losing "9.5 pounds in 6 months" and/or "10 pounds in 3+ months." *See* Chadwick Decl. ¶ 6. This, too, proves problematic for purposes of the reliance inquiry. *See Aaronson v. Vital Pharm., Inc.*, No. 09-CV-1333 W (CAB), 2012 WL 12844724, at *4 (S.D. Cal. Feb. 3, 2012) (denying class certification on grounds that the plaintiff had failed to demonstrate that common issues predominated where "different class members may have relied on different representations in purchasing the product") (citing *Gartin v. S&M Nutec LLC*, 245 F.R.D. 429, 437 (C.D. Cal. 2007)); *Gonzalez*, 247 F.R.D. at 624 (concluding that common questions did not predominate with respect to misrepresentation claims where "the record shows that the proposed class members received a variety of different representations from Defendant regarding [the class] products"); *see also id.* at 625 (same as to CLRA claims); *id.* at 626 (same as to UCL and FAL claims). The Court concludes that Ms. Stokes has failed to demonstrate that common questions outweigh

individual issues regarding reliance. *See, e.g.*, *Broadbent v. Internet Direct Response*, No. CV1006508RGKFMOX, 2011 WL 13217499, at *5 (C.D. Cal. Feb. 2, 2011) (denying class certification for tea marketed as helping consumers lose weight because "[t]he Court cannot infer classwide reliance because these claims require inquiry into individualized issues," including "when the member purchased the product; how long the member used the product; the member's ability to lose weight . . . while using the product").

As for Defendants' contention that class-wide inefficacy cannot be presumed, Ms. Stokes counters that "evidence of Sensa's ineffectiveness is overwhelming[] and[,] even if it were not, Plaintiff is not required to prove her case at class certification." *Id.* at 10 (citing ECF No. 115-1 at 8–14; *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 630 (S.D. Cal. 2010)). Ms. Stokes is correct that "[p]roof of the manifestation of a defect is not a prerequisite to class certification." *Alvarez v. NBTY, Inc.*, No. 17-CV-00567-BAS-BGS, 2019 WL 2223929, at *7 (S.D. Cal. May 22, 2019) (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010)). Nonetheless, where "there are significant individualized questions as to whether the product worked as advertised for each individual class member . . . , the class cannot be sustained without resorting to individualized inquiries into the merits of each class member's claims, and therefore the class device is not appropriate." *Chow v. Neutrogena Corp.*, No. CV 12-04624 R JCX, 2013 WL 5629777, at *2 (C.D. Cal. Jan. 22, 2013) (citing *Campion v. Old Republic Home Prot. Co., Inc.*, 272 F.R.D. 517 (S.D. Cal. 2011)); *see also Alvarez*, 2019 WL 2223929, at *7 (concluding that predominance requirement was not satisfied where "determining how much, if any, benefit each person receive from the Products would overwhelm the common issues in this case"); *Broadbent*, 2011 WL 13217499, at *5 (declining to certify class where "[m]aterial individual determinations may include . . . the member's ability to lose weight . . . while using the product").

/ / /

/ / /

For all these additional reasons, the Court concludes that Ms. Stokes has not demonstrated that common issues predominate.[5]

## B.    Superiority

As the Court previously noted, *see* ECF No. 128 at 26, the final requirement for class certification is "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed R. Civ. P. 23(b)(3).  "In determining superiority, courts must consider the four factors of Rule 23(b)(3)."  *Zinser*, 253 F.3d at 1190.  The Rule 23(b)(3) factors are:

> (A) [T]he class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  The superiority inquiry focuses "on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis."  *Zinser*, 253 F.3d at 1190 (internal quotation marks omitted).  A district court has "broad discretion" in determining whether class treatment is superior.  *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

In light of the prior FTC settlement, the Court previously concluded that the "*Kamm*[ *v. California Development Co.*, 509 F.2d 205 (9th Cir. 1975)] factors weigh almost exclusively in favor of finding that the superiority requirement has not been met here."  *See*

---

[5] The Court notes that there are issues defeating class certification not briefed by the Parties.  For example, Ms. Stokes now seeks to certify a class of consumers who purchased the Class Products through third-party retailers.  Under California law, however, each member of the putative class would have to establish vertical privity with Sensa to prove his or her implied warranty claim, again leading to predominance of individual issues.  *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 986–87 (C.D. Cal. 2015) (citing *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 670 (C.D. Cal. 2014)), *aff'd*, 844 F.3d 1121; 674 F. App'x 654 (9th Cir. 2017).

ECF No. 128 at 29. Ms. Stokes claims that her revised proposed class, which eliminates those who purchased the product directly from Sensa, remedies the Court's prior concerns because, "[o]f the 477,537 people who received a payment [from the FTC], only 459 were not on the customer list provided by Sensa's counsel showing that they purchased the product directly from Sensa," meaning "most members of the narrowed class did not receive ***any*** relief from the FTC settlement" and the *Kamm* considerations should no longer apply. Renewed Mot. at 10 (emphasis in original).

Defendants maintain that class proceedings still are not a superior method of resolving the controversy because of the FTC settlement. *See* Opp'n at 8. Specifically, the proposed class action is duplicative because "between .45% and 2.3% of the non-direct purchasers already received a partial refund from the FTC Settlement," which is "in line with or exceed[s] the class settlement claims rates generally approved by the courts." *Id.* at 8–9. Further, "the FTC Settlement was widely publicized on television, in print publications, and on the internet." *Id.* at 9.

Ms. Stokes counters that "[t]he FTC settlement cannot be 'superior' when more than 97.7% of the class recovered nothing" and "no direct notice was provided [by the FTC] to indirect purchasers like Plaintiff Stokes and others who bought through retailers like Costco and GNC," Reply at 1, whose records may be subpoenaed in this action. *See id.* at 2. Ms. Stokes adds that "any concern the Court has about the 2014 FTC settlement can easily be resolved by including a specific exclusion in the class definition for Class Members who obtained relief from the FTC settlement." *Id.* at 10.

Despite Ms. Stokes' arguments and attempts to narrow her proposed class, the Court remains troubled by the FTC settlement given the Ninth Circuit's controlling guidance in *Kamm*. The Ninth Circuit has long advised that "Rule 23 itself indicates that prior litigation is a pertinent factor to be considered," meaning that "[p]rior similar litigation is often the critical factor in denying (b)(3) certification." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1314 (9th Cir. 1977) (citing *Kamm*, 509 F.2d 205; *Utah v. Am. Pipe & Constr. Co.*, 49 F.R.D. 17 (C.D. Cal. 1969)). The fact remains that the FTC mailed over 477,000 refund

checks totaling over $26,000,000 to consumers who had bought the allegedly deceptively advertised Class Products. 1st RJN Ex. 10.

Ms. Stokes now contends that "[t]he FTC settlement cannot be superior when more than 97.7% of the class recovered nothing." Reply at 1. The Court previously expressed its view that *Kamm* foreclosed this argument, concluding that, "although the FTC settlement did not provide as much money as Plaintiff and the class members seek, this disparity does not prevent the Court from considering the FTC settlement in analyzing superiority." *See* ECF No. 128 at 27–28. Ms. Stokes offers no new authority that would lead the Court to reconsider its prior decision on that point.

Ms. Stokes also argues that "[t]his case is the only hope for the remaining victims of the Sensa hoax." Reply at 1 (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996); *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 469 (S.D. Cal. 2014)). The Court previously indicated, however, that "Plaintiff Stokes' claims (as well as other individual claims) are still viable." *See* ECF No. 128 at 29. Ms. Stokes does not dispute this, instead arguing that there is "no inventive to bring individual claims." *See* Renewed Mot. at 9 (citing *Guido v. L'Oreal, USA, Inc.*, Nos. CV 11-1067 CA (JCx), CV 11-5465 CAS (JCx), 2013 WL 3353857, at *17 (C.D. Cal. July 1, 2013)). That may be true, but none of Ms. Stokes' cited authorities granted certification in the face of prior similar litigation, rendering them inapposite.

Finally, Ms. Stokes contends that "no direct notice was provided to indirect purchasers like Plaintiff Stokes" and that the new reports about the FTC settlement did not "satisfy the requirements of a court-approved notice program under Fed. R. Civ. P. 23(c)(2)(B)." Reply at 1–2. This argument is also unavailing and has been rejected by other district courts. *See, e.g.*, *Murray v. DirecTV, Inc.*, No. ML 09-2093 AG (ANX), 2014 WL 12597904, at *4 (C.D. Cal. Apr. 23, 2014) ("Plaintiff's next argument is that, compared to what the federal rules require for class actions, there was inadequate notice made to [potential class members] about the [judgment in prior related litigation]. But Plaintiff does not explain why the [judgment in prior related litigation] would need this

level of notice to be a viable alternative to a class action under the superiority analysis, nor does Plaintiff cite any authority for that proposition. In the class action context, adequate notice is 'a procedural safeguard[] . . . necessary to bind absent class members.' . . . But this due process consideration isn't an issue with the [judgment in prior related litigation], as it doesn't preclude any consumer from bringing an individual lawsuit.") (citation omitted); *see also Imber-Gluck v. Google Inc.*, No. 5:14-CV-01070-RMW, 2015 WL 1522076, at \*4 (N.D. Cal. Apr. 3, 2015) (denying class certification despite the plaintiffs' criticism of notice provided to consumers of FTC settlement).

As before, *see* ECF No. 128 at 26–29, the Court concludes that "the *Kamm* factors weigh almost exclusively in favor of finding that the superiority requirement has not been met here" and, consequently, "Plaintiff Stokes has failed to establish that the proposed class action is superior to other methods for adjudication of the controversy." *Id.* at 29.

## IV. Ascertainable Class

Although the Ninth Circuit previously had intimated that certification is improper where there is "no definable class," *Lozano*, 504 F.3d at 730, it recently declined to interpret Rule 23 to require a showing of ascertainability. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir.), *cert. denied*, 138 S. Ct. 313 (2017). Consequently, despite the Court's previous conclusion that Ms. Stokes had failed to demonstrate that her proposed class was ascertainable, *see* ECF No. 128 at 29–31, and Defendants' renewed contention to that effect, *see* Opp'n at 24, the Court concludes that Ms. Stokes need not make a showing as to ascertainability. *See Briseno*, 844 F.3d at 1123.

## V. The Alternative Florida Class

Alternatively, Ms. Stokes seeks to certify a Florida class comprising "[a]ll persons who purchased the Sensa Weight-Loss System in Florida on or after August 22, 2012 excluding purchases made directly from Sensa, Inc. and Sensa Products, LLC." *See, e.g.*, Renewed Mot. at 2. Defendants contend that the proposed Florida class cannot be certified because it "suffers from all the defects detailed above that apply to the proposed nationwide class, except for the 'state law differences' predominance issue." Opp'n at 25.

Having concluded that Ms. Stokes has failed to meet the Rule 23(b)(3) requirements, *see supra* Section III, the Court must agree. Further, "the desirability of concentrating this litigation in the [Southern] District of California is unclear because the . . . purported class members are not residents of this state." *Gravestock v. Abilene Motor Express, Inc.*, No. SACV14170JVSRNBX, 2018 WL 1620885, at *8 (C.D. Cal. Mar. 8, 2018). The Court therefore **DENIES** Ms. Stokes' Renewed Motion as to the alternative Florida class.

## CONCLUSION

The Court again finds Plaintiff Stokes has not met her burden in establishing that common issues predominate over individual issues and the class action is superior to other methods. The Court therefore **DENIES** Ms. Stokes' Renewed Motion for Class Certification (ECF No. 134). The Court **ORDERS** the Parties to meet and confer and, within seven (7) days of the electronic docketing of this Order, to file a joint status report.

**IT IS SO ORDERED.**

Dated: September 10, 2019

Hon. Janis L. Sammartino
United States District Judge